*In re* CAMERON'S ESTATE.

GOODELL *v.* YEZERSKI.

1. DESCENT AND DISTRIBUTION—ILLEGITIMATE CHILD—BASTARDS— STATUTES.

Children of an illegitimate take by right of representation from the estate of the illegitimate's mother, under 3 Comp. Laws, § 9065, after the death of their parent. *Curtis* v. *Hewins*, 11 Metc. (Mass.) 294, criticized.[1]

2. SAME—STATUTORY CONSTRUCTION—DECISIONS OF SISTER STATE.

After the adoption of a statute from a sister State, decisions of the courts thereof, not made prior to the enactment of such law, are not controlling in the interpretation of the act, and are considered as advisory only.

Error to Alpena; Emerick, J. Submitted April 10, 1912. (Docket No. 95.) Decided May 31, 1912.

Appeal by Anastasia Goodell from an order of the probate court of Alpena county assigning to Casimir Yezerski and Elizabeth Blavet the estate of Anna Cameron, deceased. Judgment for appellees, and said Anastasia Goodell brings error. Reversed.

*Ignatius J. Salliotte,* for appellant.

*Joseph Cavanagh,* for appellees.

BROOKE, J. Anna Cameron died intestate April 16, 1910. She was never married, but had an illegitimate son, Antoine Dennoyer, who died November 13, 1900. The appellant, Anastasia Goodell, is the legitimate and only child of Antoine Dennoyer. The estate of Anna Cameron was duly administered in probate court and an

---

[1] As to inheritance from illegitimate, see note in 23 L. R. A. 753. Right of lineal descendants to inherit through illegitimate, see note in 27 L. R. A. (N. S.) 220.

order there made assigning the residue thereof to Casimir Yezerski and Elizabeth Blavet, the brother and sister of Anna Cameron. An appeal was taken to the circuit court, where the order of distribution was affirmed. Anastasia Goodell has now removed the case to this court for review by writ of error. The sole question raised upon the record is the proper construction to be given to 3 Comp. Laws, § 9065:

" Every illegitimate child shall be considered as an heir of his mother, and shall inherit her estate, in like manner as if born in lawful wedlock; but shall not be allowed to claim, as representing his mother, any part of the estate of any of her kindred, either lineal or collateral."

Michigan adopted this statute from Massachusetts, and it will be found in the Revised Statutes of 1838, at page 268. Some eight years after it became a part of the statute law of Michigan, it received judicial construction by the Massachusetts court. *Curtis* v. *Hewins,* 11 Metc. (Mass.) 294. In that case the precise situation had arisen which is here presented, and the court held, without discussion, that "the statute provision did not apply to grandchildren of the mother of an illegitimate child."

It is contended by the appellees that this construction is controlling upon this court, under the authority of *Besser* v. *Alpena Circuit Judge,* 155 Mich. 631 (119 N. W. 902); *Preston Nat. Bank* v. *Wayne Circuit Judge,* 142 Mich. 272 (105 N. W. 757). In the latter case it is said that:

" It is an established rule of construction that the adoption of a statute of a sister State is presumed to have been had with reference to the previous construction given to such statute by the courts of such State "—citing cases.

This rule is not absolutely imperative. *Stellwagen* v. *Wayne Probate Judge,* 130 Mich. 166 (89 N. W. 728). The rule, however, can have no application in the instant case, because the statute under consideration did not receive judicial construction in Massachusetts until *long*

*after* its adoption by this State. The decision in that State should receive just that consideration as authority to which it would be entitled under ordinary circumstances. Examined in this light, it is not convincing. The statute is not analyzed, and no reason or authority is advanced in support of the conclusion. It is a bald determination of the point at issue without more.

We are therefore free to adopt such a construction of the law in Michigan as commends itself to our judgment. 5 Cyc. p. 642, note 95, states the rule as follows:

"The death of the illegitimate before descent cast will not preclude his issue from receiving the estate which would have vested in him and be thereby transmitted to his issue were he alive."

Cases from various jurisdictions are cited by the author in support of the rule. In addition to those cited, the following cases also lend strength in some measure to the proposition: *Turnmire* v. *Mayes*, 121 Tenn. 45 (114 S. W. 478); *Houston* v. *Davidson*, 45 Ga. 574; *Bales* v. *Elder*, 118 Ill. 436 (11 N. E. 421); *Jenkins* v. *Drane*, 121 Ill. 217 (12 N. E. 684); *McGuire* v. *Brown*, 41 Iowa, 650; *Brewer* v. *Hamor*, 83 Me. 251 (22 Atl. 161); *Coor* v. *Starling*, 54 N. C. 243; *McBryde* v. *Patterson*, 78 N. C. 412; *Powers* v. *Kite*, 83 N. C. 156; *Grundy* v. *Hadfield*, 16 R. I. 579 (18 Atl. 186). It is stated in 27 Am. & Eng. Enc. Law (2d Ed.), at page 333:

"According to the construction placed upon some of the statutes which confer inheritable qualities upon illegitimate children, the lawful issue of a deceased illegitimate parent does not inherit the estate of a parental or maternal ancestor of the parent to which the bastard would have been entitled if living."

Four cases are cited in support of the text, only one of which is direct authority upon the point. That one is *Curtis* v. *Hewins, supra*. The text continues:

" But the statutes of some of the United States are given a different construction, and the children of a deceased illegitimate child succeed to any estate which the

illegitimate would have inherited if alive"—citing many of the cases noted above.

An examination of all the decisions will disclose that the statutes under which they were pronounced were not exactly like our own, nor are the facts the same in any case except *Curtis* v. *Hewins, supra.* The facts in the case of *Grundy* v. *Hadfield, supra,* are not similar to those in the case at bar, and the Rhode Island statute differs from our own. It provides:

"Bastards shall be capable of inheriting or transmitting inheritance, on the part of their mother, in like manner as if they had been lawfully begotten of such mother."

In an earlier case (*Briggs* v. *Greene,* 10 R. I. 495), the court in construing the statute said:

"They shall inherit as the same mother's legitimate children might. The illegitimate are put on the same footing as the legitimate for the purpose of inheritance, and for this purpose are legitimate. They have then all the same kindred as her legitimate children have, and when those born in lawful wedlock take by descent according to degrees prescribed by the statute, the others take also."

It will be noted that the foregoing excerpt deals only with the rights of the bastard *to inherit* under the statute. His right to transmit such inheritance collaterally is granted by the statute. He could always at common law transmit his inheritance lineally to his own descendants. This case dealt with the right of one illegitimate daughter to inherit under the statute from another illegitimate daughter of the same mother; the mother having predeceased her. The Iowa statute provides that:

"Illegitimate children inherit from the mother and the mother from the children."

In the case of *McGuire* v. *Brown, supra,* this statute was construed. There, the deceased left surviving him two brothers and one Martha L. Gibbins, an illegitimate daughter of his deceased sister, Sarah McGuire. The

facts therefore are, upon principle, the same as those in the case at bar. The court said:

> "This section constitutes an illegitimate child a lawful heir of the mother, for the capacity to inherit being conferred, it follows that the child is in effect an heir to the mother and the mother an heir to the child."

The North Carolina cases are not of value, because they do not deal with the precise question here at issue. The Illinois statute is so much broader than our own that the decisions in that State lose value as direct precedents. The case of *Ash* v. *Way's Adm'rs*, 43 Va. 203, is instructive. See, also, *Turnmire* v. *Mayes*, *supra*.

While many of the cases cited have no direct or controlling effect upon the question now before us, they do serve to illustrate the fact that the progress of civilization and the spread of correct ideas upon the subject have tended largely to the amelioration of the condition of illegitimates and to the obliteration of the old common-law doctrine that they were to be regarded as outcasts. The statute in question is remedial in character, and it is to be presumed that the legislature intended the most beneficial construction of the act consistent with a proper regard for the ordinary canons of construction. Notwithstanding the rule that a statute in derogation of the common law must be construed strictly, it is well settled that it must be construed sensibly and in harmony with the legislative purpose. What was that purpose as indicated by the statute? If it was the legislative intent to take care of the interest of the illegitimate alone, the statute would have been complete when it said:

> "Every illegitimate child shall be considered as heir of his mother."

Those words alone were sufficient to clothe the illegitimate himself with heritable qualities so far as his mother's estate was concerned. But other words were added:

> "And shall inherit her estate in like manner as if born in lawful wedlock."

This language is used to qualify or define the character of his heirship provided for earlier in the section. He is an heir of his mother. What kind of an heir? An heir the same as if born in lawful wedlock. What are the incidents of heirship of one born in lawful wedlock? Obviously the first and most important is the right to transmit his inheritance to the heirs of his body. But we are of opinion that, even without the definitive words, the situation would be the same, for at common law the illegitimate could transmit his inheritance to the heirs of his body.

The judgment assigning the residue of the estate to the brother and sister of Anna Cameron is reversed, and the case remanded for further proceedings in accordance with this opinion.

MOORE, C. J., and STEERE, MCALVAY, BLAIR, STONE, and OSTRANDER, JJ., concurred. BIRD, J., did not sit.