## MARQUIS v HARTFORD ACCIDENT & INDEMNITY
## (AFTER REMAND)

Docket No. 94617. Argued October 6, 1993 (Calendar No. 9). Decided March 15, 1994.

Marie Marquis brought an action under the no-fault act in the 72nd District Court against Hartford Accident & Indemnity, for work-loss benefits, following recovery from injuries suffered in an automobile accident, for the remainder of the three-year period after the date of the accident as provided in MCL 500.3107(1)(b); MSA 24.13107(1)(b), claiming that she had been permanently replaced at her job and that another job subsequently accepted had proved to be unsuitable. The court, Richard A. Cooley, Jr., J., granted summary disposition for the defendant, finding that the plaintiff was seeking damages for lost earning capacity rather than actual work loss. The St. Clair Circuit Court, Ernest F. Oppliger, J., ruled that she was entitled to the difference between her earnings at her original job and her subsequent job the two months she worked, but was not entitled to benefits after she quit the second job because any loss was not a direct consequence of the accident. The Court of Appeals, Gribbs, P.J., and Gillis and Hood, JJ., denied leave to appeal (Docket No. 122436). The Supreme Court, in lieu of granting leave to appeal, remanded the case to the Court of Appeals for consideration as on leave granted. 436 Mich 866 (1990). On remand, the Court, D. E. Holbrook, Jr., P.J., and Marilyn J. Kelly, J. (Griffin, J., dissenting), reversed, holding that the plaintiff was entitled to work-loss benefits based on the pay differential between the two jobs, for the two months she worked on the second job, as well as the remainder of a statutory three-year period (Docket No. 133472). The defendant appeals.

In a unanimous opinion by Justice Griffin, the Supreme Court *held:*

Eligibility for work-loss benefits under MCL 500.3107(1)(b);

REFERENCES

Am Jur 2d, Automobile Insurance § 361.

See ALR Index under Mitigation or Aggravation of Damages; No-fault Insurance.

MSA 24.13107(1)(b) is not restricted to the period of disability caused by an accident if the continued loss of income is attributable to injury incurred in the accident. A claim for work-loss benefits is distinct from any claim for lost earning capacity, and is subject to the common-law obligation to mitigate damages.

1. Section 3107(1)(b) of the no-fault act provides work-loss benefits to compensate persons who are injured in automobile accidents for the income they would have received but for the accident. The eligibility for work-loss benefits, while subject to other statutory limitations, is not restricted to the period of disability if the continued loss of income is attributable to injury incurred in the accident.

2. A claim for work-loss benefits, as defined in § 3107(1)(b), is distinct from any claim for lost earning capacity. In this case, the plaintiff does not seek damages for loss of earning capacity; rather, she asks for the benefits provided under § 3107(1)(b) that compensate for the loss of income from work she would have performed during the first three years after the date of the accident had she not been injured.

3. A supervening, independent event that severs the chain of causation precludes recovery of work-loss benefits. However, in this case, the plaintiff's voluntary termination of her post-injury job was not such an event. Her effort to find suitable work to mitigate damages was directly related and attributable to the automobile accident and the injuries incurred. There was no determination by the trial court that the acceptance of substitute work, or the voluntary termination of that work, constituted a removal of the plaintiff from the work force.

4. The right to work-loss benefits provided by § 3107(1)(b) is subject to the common-law obligation to mitigate damages. In the absence of a contrary expression by the Legislature, well-settled common-law principles are not to be abolished by implication in the guise of statutory construction.

5. The district court erred in granting summary disposition for the defendant. The plaintiff is entitled to differential benefits for the period she worked in the postaccident job. The Court of Appeals also erred in awarding the plaintiff benefits for the period beyond her voluntary termination of the postaccident job in the absence of any determination by the trial court concerning the plaintiff's obligation to mitigate damages.

Affirmed in part, reversed in part, and remanded.

195 Mich App 286; 489 NW2d 207 (1992) affirmed in part and reversed in part.

1. INSURANCE — NO-FAULT — WORK-LOSS BENEFITS — CONTINUED
   LOSS OF INCOME.

   Eligibility for work-loss benefits under the no-fault act is not
   restricted to the period of disability caused by an accident if
   the continued loss of income is attributable to injury incurred
   in the accident (MCL 500.3107[1][b]; MSA 24.13107[1][b]).

2. INSURANCE — NO-FAULT — WORK-LOSS BENEFITS — LOST EARNING
   CAPACITY.

   A claim for work-loss benefits is distinct from any claim for lost
   earning capacity (MCL 500.3107[1][b]; MSA 24.13107[1][b]).

3. INSURANCE — NO-FAULT — WORK-LOSS BENEFITS — DUTY TO MITI-
   GATE.

   The right to work-loss benefits is subject to the common-law
   obligation to mitigate damages (MCL 500.3107[1][b]; MSA
   24.13107[1][b]).

*Michael McNamee* for the plaintiff.

*Cummings, McClorey, Davis & Acho, P.C.* (by *Marcia L. Howe* and *Anne M. McLaughlin*), for the defendant.

GRIFFIN, J. We must determine the meaning of the "work loss" provision[1] of the no-fault insurance act[2] in a situation in which plaintiff, after recovering from automobile accident injuries, found that she could not return to her job because it had been filled with a permanent replacement. Six months later she located another job that paid substantially less, but, finding it unsuitable, she quit after two months.

The Court of Appeals ruled that the no-fault act entitles plaintiff to work-loss benefits based on the wage differential between the two jobs, not only for the two months she worked on the second job, but also for the remainder of a statutory three-year period following the accident. We affirm in

[1] MCL 500.3107(1)(b); MSA 24.13107(1)(b).

[2] 1972 PA 294, MCL 500.3101 *et seq.*; MSA 24.13101 *et seq.*

part, reverse in part, and remand to the trial court for further proceedings.

I

Before the automobile accident on November 16, 1985, in which plaintiff Marie Marquis suffered disabling injuries, she was employed as office manager by the Eugene Welding Company. When she recovered and was released for return to work by her physician on March 17, 1986, she found that she had no job because her position at Eugene Welding had been filled. For the period of about six months that followed, during which she looked for other employment, plaintiff received work-loss benefits from her no-fault insurer, based on the wages she earned at the time of the accident, $514 per week.

Thereafter, on August 12, 1986, plaintiff found another job with the Boddy Construction Company, and accepted it even though the new position paid only $280 a week. At that point, despite the income differential of $234 per week, her insurer terminated payment to plaintiff of all work-loss benefits. Two months later, on October 12, 1986, plaintiff quit the job at Boddy Construction because, as she explained, the work assigned was "not my type of work"; the "work described to me and [in] the ad in the paper was not the work given to me."[3]

Plaintiff brought this suit in district court against her insurer, claiming work-loss benefits under the no-fault act. Opining that plaintiff was seeking damages for lost earning capacity rather than actual work loss, the district court granted a

---

[3] Plaintiff's letter addressed to defendant Hartford, dated October 25, 1986.

motion by defendant for summary disposition pursuant to MCR 2.116(C)(10).

On appeal to the St. Clair Circuit Court, plaintiff contended that she was entitled to wage-loss benefits for two months based on the difference between her earnings at Eugene Welding and Boddy and that she should receive full benefits for the remainder of the statutory three-year period because the work at Boddy was not appropriate and she had not unreasonably failed to find substitute employment. In the alternative, plaintiff claimed benefits for the period following her termination of the postaccident job based on the wage differential. The circuit judge agreed with respect to the two-month period, but ruled that plaintiff was entitled to no benefits after she quit the second job "as this loss was not a direct consequence of her auto accident."

Subsequently, a divided panel[4] of the Court of Appeals, after remand from this Court,[5] reversed that portion of the circuit court's decision that denied benefits following termination of plaintiff's postaccident job, explaining:

> Our decision in this case, to continue benefits based on the pay differential, does not reward plaintiff for quitting; it also does not reward defendant for the happenstance that plaintiff's new job did not work out. Furthermore, it implicitly recognizes that plaintiff was forced to take the new job because of accident-related injuries. The benefits which plaintiff is eligible for are those which

[4] The dissenting judge opined that the panel majority had confused loss of earning capacity and loss of actual earnings. Further, citing *Coates v Michigan Mutual Ins Co,* 105 Mich App 290; 306 NW2d 484 (1981), he would have denied plaintiff's claim for the period following termination of her postaccident job on the ground that her "decision not to work is a cause independent and intervening from the accident." 195 Mich App 286, 293; 489 NW2d 207 (1992).

[5] 436 Mich 866 (1990).

resulted from wage loss due to her injuries and which continued regardless of whether she kept the new job. [195 Mich App 286, 290; 489 NW2d 207 (1992).]

We then granted defendant's application for leave to appeal. 442 Mich 926 (1993).

II

This appeal requires us to determine the meaning of "work loss" as that term is used in § 3107 of the no-fault act. In addition to other personal protection insurance benefits that may be due from an insurer for accidental bodily injury, § 3107(1)(b), in part, requires payment for:

Work loss consisting of loss of income from work an injured person would have performed during the first 3 years after the date of the accident if he or she had not been injured. [MCL 500.3107(1)(b); MSA 24.13107(1)(b).][6]

---

[6] The full text of § 3107(1)(b) provides:

Work loss consisting of loss of income from work an injured person would have performed during the first 3 years after the date of the accident if he or she had not been injured. Work loss does not include any loss after the date on which the injured person dies. Because the benefits received from personal protection insurance for loss of income are not taxable income, the benefits payable for such loss of income shall be reduced 15% unless the claimant presents to the insurer in support of his or her claim reasonable proof of a lower value of the income tax advantage in his or her case, in which case the lower value shall apply. Beginning March 30, 1973, the benefits payable for work loss sustained in a single 30-day period and the income earned by an injured person for work during the same period together shall not exceed $1,000.00, which maximum shall apply pro rata to any lesser period of work loss. Beginning October 1, 1974, the maximum shall be adjusted annually to reflect changes in the cost of living under rules prescribed by the commissioner but any change in the maximum shall apply only to benefits arising out of accidents occurring subsequent to the date of change in the maximum.

In construing the statutory language at issue, we must seek to give effect to the intent of the Legislature, *Lafayette Transfer & Storage Co v Public Service Comm,* 287 Mich 488; 283 NW 659 (1939), and in that effort we are guided by the rules of statutory construction. Where the language of a statute is of doubtful meaning, a court must look to the object of the statute in light of the harm it is designed to remedy, and strive to apply a reasonable construction that will best accomplish the Legislature's purpose. *Webster v Rotary Electric Steel Co,* 321 Mich 526; 33 NW2d 69 (1948). In this endeavor, a court should not abandon the canons of common sense. *Bay Trust Co v Agricultural Life Ins Co,* 279 Mich 248; 271 NW 749 (1937).

In general, as Justice LEVIN stated in *Perez v State Farm Mutual Automobile Ins Co,* 418 Mich 634, 640; 344 NW2d 773 (1984):

> The legislative purpose in providing work-loss benefits to an injured person . . . is to compensate him (and his dependents) by providing protection from economic hardship caused by the loss of the wage earner's income as a result of an automobile accident. [Citations omitted.]

Elaborating on the origins of § 3107(1)(b), Justice BRICKLEY, writing for the Court in *MacDonald v State Farm Mutual Ins Co,* 419 Mich 146; 350 NW2d 233 (1984), explained that in large measure our no-fault act, including § 3107(1)(b), is patterned after the Uniform Motor Vehicle Accident Reparations Act (UMVARA).[7] While acknowledging that our Legislature did not adopt UMVARA word for word, the *MacDonald* Court found instructive the paral-

[7] See 14 ULA 41 ff.

lel UMVARA "work loss" provision,[8] and particularly the drafter's comment:

> " 'Work loss,' as are other components of loss, is restricted to accrued loss, and this covers only actual loss of earnings as contrasted to loss of earning capacity. Thus, an unemployed person suffers no work loss from injury until the time he would have been employed but for his injury. On the other hand, an employed person who loses time from work he would have performed had he not been injured has suffered work loss . . . . Work loss is not restricted to the injured person's wage level at the time of injury. For example, an unemployed college student who was permanently disabled could claim loss, at an appropriate time after injury, for work he would then be performing had he not been injured. Conversely, an employed person's claim for work loss would be appropriately adjusted at the time he would have retired from his employment." [419 Mich 151.]

Reading the words of § 3107(1)(b) in our no-fault act in the light of its legislative history, including the drafter's comment to the uniform act, the *MacDonald* Court found it clear that "work-loss benefits compensate the injured person for income he would have received *but for* the accident."[9] 419 Mich 152.

No challenge is presented by this appeal to the

---

[8] UMVARA defines "work loss" as "loss of income from work the injured person would have performed if he had not been injured, and expenses reasonably incurred by him in obtaining services in lieu of those he would have performed for income, reduced by any income from substitute work actually performed by him or by income he would have earned in *available appropriate substitute work he was capable of performing but unreasonably failed to undertake*." UMVARA, § 1(a)(5)(ii), 14 ULA 42-43.

[9] We agree with the Court of Appeals panel that concluded in *Luberda v Farm Bureau General Ins Co*, 163 Mich App 457, 461; 415 NW2d 245 (1987), that use of the term "automobile accident" in this context was intended by the *MacDonald* Court to be a synonym for "accident-related injuries."

ruling in *Nawrocki v Hawkeye Security Ins Co,* 83
Mich App 135; 286 NW2d 317 (1978), that an
injured person's right to work-loss benefits under
§ 3107(1)(b) is not necessarily limited to the period
of his disability. Indeed, as already noted, defen-
dant insurer continued in this case to pay work-
loss benefits, based on plaintiff's wage level at the
time of the accident, for a period of about six
months after plaintiff no longer was disabled.

In *Nawrocki,* after being disabled by an auto-
mobile accident for nearly two years, the plaintiff
was advised by his doctor that he could return to
work, only to find, as in this case, that his job had
been filled and no other work was available. The
Court of Appeals held, and it has been settled law
since then, that eligibility for § 3107(1)(b) work-loss
benefits, while subject to other statutory limita-
tions, is not restricted to the period of disability if
the insured's continued loss of income is attribut-
able to injury incurred in the accident. Writing for
the *Nawrocki* panel, Judge (now Chief Justice)
CAVANAGH explained that when it passed the no-
fault act,

> the Legislature had the workers' compensation act
> before it, and, had it chosen to do so, could easily
> have adopted that act's limitation of benefits to
> the period of disability. . . . The Legislature chose
> not to so limit its act, and instead created a
> statute which requires no more than that the work
> be lost as a direct consequence of the injury. [83
> Mich App 144.]

Against that background, we turn now to con-
sider issues raised by defendant in this appeal.

III

Defendant first asserts that its obligation to

plaintiff for work-loss benefits ended once she accepted other employment. Relying on *Ouellette v Kenealy,* 424 Mich 83, 85; 378 NW2d 470 (1985), that holds that damages for loss of "earning capacity" are not recoverable under the no-fault act, defendant argues that plaintiff's claim to differential benefits for any period beyond the point of her reemployment amounts to a claim for loss of "earning capacity."

We disagree. Rather than providing defendant with support, we read *Ouellette* as persuasive authority for plaintiff's position that her claim for work-loss benefits, as defined in § 3107(1)(b), is distinct and separate from any claim that might be made for lost earning capacity. Whether or not it is fact, plaintiff makes no claim in this lawsuit that her earning capacity remains impaired, or that it was impaired after she recovered and took the postaccident job. As we read her complaint in this action, plaintiff does not seek damages for loss of earning capacity; rather, she asks for the benefits provided under § 3107(1)(b) that compensate for the "loss of income from work . . . [she] would have performed during the first 3 years after the date of the accident if . . . she had not been injured."

In noting the difference between "work loss" and lost "earning capacity," the *Ouellette* Court, like the *MacDonald* Court, quoted with approval from the drafter's comments to § 1(a)(5) of the UMVARA:

> " 'Work loss,' as are the other components of loss, is restricted to accrued loss, and thus covers only *actual loss of earnings as contrasted to loss of earning capacity.*" [424 Mich 86-87.]

We agree with the *Nawrocki* panel, which also focused upon this question and stated:

The case law in this state is quite clear that loss of earning capacity is a category of harm separate from loss of wages . . . .

* * *

[T]he cases which discuss earning capacity damages stress repeatedly that plaintiff's right is to recover not what he *would* have earned but what he *could* have earned. This contrasts sharply with the language of the statute [§ 3107(1)(b)] before us: "benefits are payable for . . . loss of income from work an injured person *would* have performed . . . ." [83 Mich App 140-141. Emphasis added; citations omitted.]

Accordingly, we find it clear that plaintiff's claim is for, and any recovery to which she may be entitled in this lawsuit is limited to, work-loss benefits under the no-fault act, rather than lost earning capacity.

IV

We turn next to defendant's contention that plaintiff's voluntary termination of her postinjury job constituted a supervening, independent event that severed the chain of causation, thus precluding recovery of benefits.

Defendant relies on *MacDonald, supra.* In that case, a plaintiff who incurred injuries in an automobile accident suffered an unrelated heart attack fifteen days later. Both events were disabling. Holding that in such circumstances work-loss benefits under § 3107(1)(b) were limited to the fifteen-day period that preceded the heart attack, the *MacDonald* Court explained:

[W]ork-loss benefits are available to compensate only for that amount that the injured person would have received had his automobile accident not occurred. Stated otherwise, work-loss benefits

compensate the injured person for income he would have received *but for* the accident. In the present case, plaintiff would have worked and earned wages for two weeks, until the date of his heart attack. After that date plaintiff would have earned no wage even had the accident not occurred . . . . [419 Mich 152. Emphasis added.]

Further, it has been held that where a claimant who has been injured in an automobile accident is later incarcerated following conviction for a crime, the no-fault carrier's obligation to pay work-loss benefits is suspended at least for the incarceration period. So ruling in *Luberda v Farm Bureau General Ins Co,* 163 Mich App 457; 415 NW2d 245 (1987), the Court of Appeals reasoned that, like the heart attack in *MacDonald,* the claimant's incarceration, unrelated to the injuries sustained, was an "independent intervening event preventing plaintiff's gainful employment." *Id.* at 460. See also *Smith v League General Ins Co,* 424 Mich 893; 382 NW2d 168 (1986).

Although we agree with the logic of *MacDonald* and *Luberda,* we find that it does not apply to the facts thus far developed in this case. Unlike the heart attack in *MacDonald,* plaintiff's effort to find suitable work in order to mitigate her damages was not unrelated; rather, it was directly related and attributable to the automobile accident and the injuries incurred. Viewing the pleadings and evidence thus far produced in a light most favorable to plaintiff, as the district court was required to do in considering defendant's motion for summary disposition, it appears that but for the accident and resulting injuries, plaintiff would have continued to perform her work as office manager at Eugene Welding during the ensuing three-year period. While her post-accident effort to find other suitable work, however tempo-

rary and unsuccessful, may appropriately be weighed in terms of her obligation to mitigate damages, see part v, we find that it is not to be equated for purposes of causation determination with the unrelated heart attack in *MacDonald* or the imprisonment for crime in *Luberda,* each of which was a supervening event that completely removed the claimant from the work force. There was no determination by the trial court in this case that plaintiff's acceptance of substitute work, or her voluntary termination of that work, constituted a removal of plaintiff from the work force.[10]

Accordingly, we reject the argument that plaintiff's voluntary termination of her post-accident job amounted to a supervening event that broke the "but for" chain of causation.

v

Finally, we turn to the issue of mitigation of damages.[11] Defendant argues that even if it is required to pay differential benefits for the two months plaintiff worked in the second job, no additional benefits should be awarded for the period thereafter because she failed to mitigate her damages.[12]

---

[10] Although plaintiff's Court of Appeals brief contains language that may be read as a concession of failure to mitigate, see 195 Mich App 292, n 1, we note in the district court record that plaintiff produced evidence that, after leaving the Boddy Construction job, she earned at least $2,573 in 1987 through temporary job assignments from Manpower Temporary Service of Port Huron.

[11] Although the Court of Appeals majority in this case did not address the mitigation issue directly or at length, it clearly did recognize an obligation on plaintiff's part to minimize her losses, e.g., "The question here is not whether plaintiff should have the same work-loss benefits after she voluntarily quit her new job as she received before she began it. *She should not.*" 195 Mich App 289. (Emphasis added.)

[12] In its answer to plaintiff's complaint, filed in district court, defendant stated as an affirmative defense that "any loss which

We recognize that the no-fault act does not explicitly mention mitigation of damages as a qualification for work-loss benefits. Further, because the Legislature did not adopt certain language found in the parallel UMVARA "work loss" provision,[13] it has been argued that the Legislature must have intended to excuse every failure or refusal by a claimant to mitigate damages.[14] We reject that argument and adopt instead the reasoning of the Court of Appeals in *Bak v Citizens Ins Co,* 199 Mich App 730; 503 NW2d 94 (1993).[15]

In *Bak,* the plaintiff recovered from disabling injuries seventeen months after an automobile accident, but found that she could not return to her former job as head operating room nurse at a hospital because the position had been filled. Later, she brought suit against her no-fault

Plaintiff has incurred is due to her failure to maintain employment . . . ." Defendant's brief in support of its motion for summary disposition, dated May 31, 1988, argued: "Plaintiff has failed to mitigate her damages by not remaining employed, when it was entirely possible for her to do so." At each level of the appellate process defendant has argued that plaintiff had a duty to mitigate her damages, and no objection was made to the timeliness of this argument. Under these circumstances, preservation of the defense of mitigation of damages is not at issue in this appeal. See *Fothergill v McKay Press,* 374 Mich 138; 132 NW2d 144 (1965).

[13] The UMVARA, § 1(a)(5)(ii), 14 ULA 43 provides:

"Work loss" means loss of income from work the injured person would have performed if he had not been injured, and expenses reasonably incurred by him in obtaining services in lieu of those he would have performed for income, reduced by any income from substitute work actually performed by him or by income he would have earned in available appropriate substitute work he was capable of performing but unreasonably failed to undertake.

[14] See the dissenting opinion of Judge FITZGERALD in *Bak v Citizens Ins Co,* 199 Mich App 730, 741; 503 NW2d 94 (1993).

[15] Although Judge HOLBROOK wrote separately in *Bak* to explain his position in *Marquis,* he concurred in the opinion of Judge CORRIGAN and expressly agreed that an "employee losing a job under these circumstances has the duty to mitigate by seeking other employment." 199 Mich App 741.

carrier, claiming work-loss benefits for the remainder of the statutory three-year period, although during that interval she made no effort to seek other employment, arguing that she had no duty to do so.

We agree with the *Bak* Court that the common-law rule requiring an injured party in a contract or tort action to mitigate damages applies in suits for work-loss benefits under the no-fault act. It is true that the parallel UMVARA provision includes, and § 3107 of the no-fault act omits, language that has been referred to as the "common law doctrine of avoidable consequences."[16] However, as we emphasized in *Rusinek v Schultz, Snyder & Steele Lumber Co,* 411 Mich 502, 508; 309 NW2d 163 (1981), in the absence of a contrary expression by the Legislature, well-settled common-law principles are not to be abolished by implication in the guise of statutory construction.[17]

---

[16] The UMVARA definition of work loss reduces benefits "by any income from substitute work actually performed . . . or by income [the injured person] would have earned in available appropriate substitute work he was capable of performing but unreasonably failed to undertake." 14 ULA 43. In the drafter's comment to UMVARA, § 1, 14 ULA 46, this language is referred to as the "common law doctrine of avoidable consequences . . . ."

[17] We recognize that the UMVARA clearly was "one of the model acts utilized as source material in the drafting of the no-fault act . . . ." *Citizens Ins Co v Tuttle,* 411 Mich 536, 546; 309 NW2d 174 (1981). In fact, this Court has held that where the statutory language differs from the UMVARA model, courts can presume that the Legislature considered the model act and rejected it. *Michigan Mutual Ins Co v Carson City Texaco, Inc,* 421 Mich 144, 148; 365 NW2d 89 (1984). Nevertheless, we find *Michigan Mutual* distinguishable from the instant case.

In *Michigan Mutual,* this Court considered the definition of "maintenance" as used in both MCL 500.3121; MSA 24.13121 and the UMVARA. The Court stated, "[i]n drawing on UMVARA as a model, the Legislature presumably considered the proposed definition of maintenance and rejected it." *Michigan Mutual, supra* at 148. In creating this presumption, however, this Court was clearly not considering the rejection of a well-established common-law rule. Hence, it did not test this presumption against the long-established rule of strictly construing statutes that are in derogation of the common law. Therefore, the

In *Rusinek,* this Court stated:

> Although a statute which expressly extinguishes a common-law right is a proper exercise of legislative authority, *Myers v Genesee Co Auditor,* 375 Mich 1; 133 NW2d 190 (1965), statutes in derogation of the common law must be strictly construed, *Morgan v McDermott,* 382 Mich 333; 169 NW2d 897 (1969), and will not be extended by implication to abrogate established rules of common law, *Bandfield v Bandfield* [117 Mich 80; 75 NW 287 (1898)]. The statute, however, must be construed sensibly and in harmony with the legislative purpose. *In re Cameron Estate,* 170 Mich 578; 136 NW 451 (1912). [*Id.* at 507-508.][18]

As Judge CORRIGAN explained in *Bak:*

> The UMVARA's definition is more generous than § 3107(b) in allowing compensation for expenses "reasonably incurred . . . in obtaining services in lieu of those [the injured person] would have performed for income" (compare *Kerby v Auto-Owners Ins Co,* 187 Mich App 552; 468 NW2d 276 [1991], holding that work-loss benefits do not include payment for substitute services in a profit-making enterprise). The UMVARA's definition at the same time is more restrictive because it expressly

---

presumption created in *Michigan Mutual* cannot overcome by way of implication a well-established common-law rule. We have consistently held that "[t]he legislature should speak in no uncertain manner when it seeks to abrogate the plain and long-established rules of the common law. Courts should not be left to construction to sustain such bold innovations." *Bandfield v Bandfield,* 117 Mich 80, 82; 75 NW 287 (1898).

18 The United States Supreme Court applies the same standard for congressional enactments. In *Norfolk Redevelopment & Housing Authority v Chesapeake & Potomac Telephone Co of Virginia,* 464 US 30, 35; 104 S Ct 304; 78 L Ed 2d 29 (1983), citing *Fairfax's Devisee v Hunter's Lessee,* 11 US (7 Cranch) 603, 623; 3 L Ed 453 (1812), the Court stated that "[i]t is a well-established principle of statutory construction that '[t]he common law . . . ought not to be deemed to be repealed, unless the language of a statute be clear and explicit for this purpose.' "

reduces benefits "by any income from substitute work actually performed . . . or by income [the insured] would have earned in available appropriate substitute work he was capable of performing but unreasonably failed to undertake." The latter is described in the drafters' comments to the UMVARA, § 1, 14 ULA 46, as "the common law doctrine of avoidable consequences."

We do not share defendant's view that Michigan courts, by favorably citing the drafters' commentary, somehow impliedly have engrafted the avoidable consequences language on our statute. Conversely, given the mixed features of the UMVARA's definition of work loss, the Legislature's failure to adopt it in toto does not command the conclusion that the Legislature has abrogated the common-law duty to mitigate. To draw that conclusion would be an unnatural reading. [*Bak, supra* at 737. Citation omitted.]

Our conclusion is also supported by the implicit acknowledgment of a duty to mitigate indicated by this language in § 3107(1)(b) of the no-fault act:

Beginning March 30, 1973, the benefits payable for work loss sustained in a single 30-day period *and the income earned by an injured person for work during the same period* together shall not exceed $1,000.00, which maximum shall apply pro rata to any lesser period of work loss. Beginning October 1, 1974, the maximum shall be adjusted annually to reflect changes in the cost of living . . . . [Emphasis added.]

Finally, to recognize that the seeker of work-loss benefits has an obligation to mitigate damages is good policy that serves the overall goals of the no-fault act. As this Court observed in *Tebo v Havlik*, 418 Mich 350, 366; 343 NW2d 181 (1984), a primary goal of the no-fault act is to "provid[e] an equitable and prompt method of redressing injuries in a way which made the mandatory insur-

ance coverage *affordable* to all motorists." (Emphasis added.) This policy promotes cost savings for consumers as well as insurers by encouraging those injured in an auto accident to rehabilitate themselves and to regain their lost earning capacity. Reasonableness is the touchstone of this obligation and, ordinarily, reasonableness of mitigation is a question for the factfinder.

Accordingly, we hold that the right to work-loss benefits provided by § 3107(1)(b) of the no-fault act is subject to the common-law obligation to mitigate damages.

## VI

We agree with the appellate courts below that the district court erred in granting defendant's motion for summary disposition.[19] We affirm the holding of those courts that plaintiff is entitled to differential benefits for the period she worked in the postaccident job. However, we conclude that on this state of the record the Court of Appeals erred in awarding benefits to the plaintiff for the period *beyond* her voluntary termination of the post-accident job in the absence of any determination by the trial court concerning plaintiff's obligation to mitigate damages.

Accordingly, the decision of the Court of Appeals is affirmed in part and reversed in part; and the case is remanded to the district court for further proceedings consistent with this opinion.

CAVANAGH, C.J., and LEVIN, BRICKLEY, BOYLE, RILEY, and MALLETT, JJ., concurred with GRIFFIN, J.

---

[19] MCR 2.116(C)(10) authorizes summary disposition upon motion and a proper showing that *"Except as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law."* (Emphasis added.)