**MENORAH INSURANCE COMPANY, LIMITED, Plaintiff–Appellant,**

v.

**W.F. WHELAN COMPANY, INCORPORATED, Defendant–Appellee.**

No. 02–2019.

United States Court of Appeals, Sixth Circuit.

Aug. 31, 2004.

Robert H. Fortunate, Paul D. Galea, Foster, Meadows & Ballard, Detroit, MI, for Plaintiff–Appellant.

William R. Bennett, III, Sheinbaum, Bennett, Giuliano, McDonnell & Levy, New York, NY, Robert D. Goldstein, Garan, Lucow, Miller, Seward, Cooper & Becker, Grand Blanc, MI, for Defendant–Appellee.

Before MARTIN and MOORE, Circuit Judges; and WEBER, Senior District Judge.*

MARTIN, Circuit Judge.

Menorah Insurance Co. appeals from an order granting summary judgment in favor of W.F. Whelan Co. Menorah argues that the district court erred when it limited its right of recovery to $50.00 per shipment. We AFFIRM.

Ortal Diecasting, Ltd., an Israeli company, manufactures and sells die-cast parts to customers in the United States and presumably elsewhere. To get its goods to its customers in the United States, Ortal ships its parts to Whelan, the defendant. Whelan then completes Ortal's customs work, stores the parts in its warehouse, and ships the products to Ortal's ultimate customer per Ortal's instructions. On September 17, 2000, a fire occurred at Whelan's warehouse in Romulus, Michigan, destroying Ortal's products stored there. At the time of the fire, Ortal was insured by the Plaintiff, Menorah Insurance. Pursuant to their insurance agreement, Menorah paid Ortal $205,000. The value of the goods destroyed exceeded $300,000.

On May 3, 2001, Menorah, as subrogee, brought suit against Whelan alleging: (1) that Whelan's negligence caused the fire; (2) that Whelan breached its duties as bailee and; (3) that Whelan breached its contract with Ortal. Whelan moved for summary judgment arguing that Ortal, by ratifying the terms in the invoices sent to Ortal after a shipment arrived, agreed to limit its right of recovery to $50.00 per shipment. The invoices contained certain "Terms and Conditions," which, in relevant part, provide:

> All shipments to or from the Customer, which terms shall include the exporter, importer, sender, receiver, owner, consignor, consignee, transfer or transferee of the shipments will be handled by the forwarder and/or customers broker (herein called "the Company") on the following terms and conditions:
>
> \*  \*  \*  \*  \*  \*
>
> 8. Limitation of Liability for Loss, etc. (a) The Customer agrees that the Company shall only be liable for any loss, damage, expense or delay to the goods resulting from the negligence or other fault of the Company; such liability shall be limited to an amount equal to the lesser of fifty dollars ($50.00) per entry or shipment or the fee(s) charged for the services, provided that, in the case of partial loss, such amount will be adjusted pro rata. . . .

Both parties agree that the invoices are the only writings between Whelan and Ortal. "Under Michigan common law '[a]n insurer, as subrogee of its insured, has no greater rights against the tortfeasor than its insured.'" *Automobile Club Ins. Ass'n v. LaPointe*, 843 F.2d 964, 966 (6th Cir. 1988) (quoting *N. Ins. Co. v. Elliot, Ltd.*, 117 Mich.App. 308, 324, 323 N.W.2d 683 (1982)). Thus, if the invoices bound Ortal, they also bind Menorah.

---

* The Honorable Herman J. Weber, Senior United States District Judge for the Southern District of Ohio, sitting by designation.

The district court, relying on these contractual provisions and Mich. Comp. Laws § 440.7202(2), granted summary judgment in favor of Whelan. Subsequently, because jurisdiction was based on the diversity of the parties and the potential recovery no longer satisfied the required jurisdictional amount, the district court dismissed the suit. *See* 28 U.S.C. § 1332(a). Menorah appealed.

We review de novo the district court's summary-judgment order. *Bridgeport Music, Inc. v. Diamond Time, Ltd.*, 371 F.3d 883, 889 (6th Cir.2004). Summary judgment is appropriate where there are no disputed material issues of fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

Mich. Comp. Laws § 440.7204(2) provides that:

> [d]amages may be limited by a term in the warehouse receipt or storage agreement limiting the amount of liability in case of loss or damage, and setting forth a specific liability per article or item, or value per unit of weight, beyond which the warehousemen shall not be liable; *provided however*, that such liability may on written request of the bailor at *the time of signing such storage agreement* or within a reasonable time after receipt of the warehouse receipt be increased on part or all of the goods thereunder, in which event increased rates may be charged based on such increased valuation, but that no such increase shall be permitted contrary to a lawful limitation of liability contained in the warehouseman's tariff, if any. No such limitation is effective with respect to the warehouseman's liability for conversion to his own use.

(Emphasis added).

Menorah argues that the language in Mich. Comp. Laws § 440.7204(2) requires that liquidated-damaged provisions in storage agreements be signed by the party against whom the limitation is asserted. It argues that since Ortal did not sign the invoices when it paid them the liquidated-damages provision contained in the invoice is of no effect.

Storage agreements, unlike warehouse receipts, are not defined elsewhere in the Michigan Code, *cf.* Mich. Comp. Laws § 440.7202 (defining "warehouse receipts"), and there is no case law defining or applying the term. Thus, we are left to discern what the Michigan legislature intended by "storage agreement," following the normal cannons of statutory analysis.

Both parties agree that this suit is governed by Michigan law. Sitting in diversity, our task is to interpret the statutory provision as would a Michigan court. *Swix v. Daisy Mfg. Co., Inc.*, 373 F.3d 678 (6th Cir.2004). According to the Michigan Supreme Court, the job of a Michigan court interpreting a statute is to "discern and give effect to the Legislatures [sic] intent as expressed in the statutory language." *Halloran v. Bhan, M.D.*, 470 Mich. 572, 576–77, 683 N.W.2d 129 (Mich. 2004). In interpreting Mich. Comp. Laws § 600.2169(1) (expert witnesses in medical malpractice actions), the Michigan Supreme Court held that the term "however" in a statute meant "in spite of that," or "on the other hand." *Id.* The Court explained that it was giving "however" its plain and ordinary meaning, and that it had properly consulted a dictionary in doing so. *Id.* The effect of the Court's analysis was to add an additional hurdle a party must get over in attempting to introduce expert testimony. *Id.*

The Michigan legislature also used the term "however" in Mich. Comp. Laws § 440.7204(2). The statute seems to convey an assumption that contracting parties will use standardized forms for storage

agreements. We believe that the Michigan legislature's use of the word "however" creates a signature requirement only when the bailor wishes to increase the potential liability of the bailee beyond the set liquidated-damages provision in the standardized form. The signature and the additional writing requirement make sense given the backdrop assumption, as the additional requirements provide proof of a negotiated change from the storage facility's general terms of storage. In all other cases, a willingness to be bound by the terms of the storage agreement, including the standardized-liquidated-damages provision, is demonstrated by the bailor's performance. By storing the equipment, the bailor accepts the terms in the standardized form.

Our interpretation is entirely consistent with Michigan law. The Michigan Supreme Court instructs that a court, when faced with an ambiguity in a Michigan statute, "should give effect to the interpretation that more faithfully advances the legislative purpose behind the statute." *People v. Adair*, 452 Mich. 473, 479–80, 550 N.W.2d 505 (1996). Our task is to consider "the object of the statute in light of the harm it is designed to remedy, and strive to apply a reasonable construction that will best accomplish the Legislature's purpose." *Marquis v. Hartford Acc. & Indem.*, 444 Mich. 638, 644, 513 N.W.2d 799 (1994). In that endeavor, we must "not abandon the canons of common sense." *Id.* We believe our reading makes sense. The Michigan legislature spelled out what it meant by "warehouse receipt," *see* Mich. Comp. Laws § 440.7202, and that suggests the legislature will spell out specific requirements when it wants to. They left the term "storage agreement" generic, creating a signature requirement only for a limited, specific scenario. Had the legislature wished to create a general signature requirement, we believe it would have said

so more clearly. The lack of specifics in defining "storage agreement" suggests to us that the Michigan legislature wished the relationship of the parties, the facts of the given case, and the course of the parties' conduct to control.

In this case, Ortal, a sophisticated company, paid each invoice as it arrived, and it procured third-party insurance to cover its potential losses. We need not define the precise bounds of "storage agreement" in this case. We are firmly convinced that Ortal's silent, consistent performance, which is undisputed, demonstrates that it agreed to be bound by the terms in the invoices. Accordingly, the judgment of the district court is AFFIRMED.