*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JASON GILLMAN, JR.,

Plaintiff-Appellant,

v

DEPARTMENT OF TECHNOLOGY,
MANAGEMENT, AND BUDGET,

Defendant-Appellee.

UNPUBLISHED
September 28, 2023

No. 362504
Court of Claims
LC No. 22-000037-MZ

Before: HOOD, P.J., and FEENEY and MALDONADO, JJ.

PER CURIAM.

Plaintiff appeals by right the trial court's order granting summary disposition in favor of defendant pursuant to MCR 2.116(C)(4) (lack of subject matter jurisdiction). We affirm.

## I. BACKGROUND

The facts of this case are simple and undisputed. On March 7, 2022, plaintiff e-mailed a FOIA request to defendant requesting copies of "[r]etention and disposal schedules for state agencies" as well as "[r]ecords related to the process of creation and approval of retention and disposal schedules for state agencies." Plaintiff followed the procedures laid out by defendant on its website, but defendant never responded to plaintiff's e-mail. Plaintiff did not contact defendant to follow up on his e-mail regarding the request for records; instead, he sued them. On March 22, 2022, plaintiff filed a complaint in the Court of Claims alleging wrongful denial of a records request and seeking attorney fees, costs, punitive damages, and fines.

On April 18, 2022, defendant's FOIA coordinator wrote a letter to plaintiff stating that she had been informed by defendant's legal counsel that a FOIA request was attached to his complaint but that defendant never actually received a FOIA request from plaintiff. Nevertheless, "in the spirit of cooperation and to avoid unnecessary litigation," defendant processed the request that was attached to the complaint. Part one plaintiff's request was granted and defendant provided "copies of the 13 General Schedules for State of Michigan Agencies." Part two of plaintiff's request, however, was denied because defendant concluded that the records were not sufficiently described

for defendant to locate responsive records, but "[i]n an effort to be of assistance," defendant provided a link to a website that "provides information on records management."

Plaintiff was not satisfied. The same day as the above-described letter, counsel for defendant e-mailed plaintiff's attorney, Philip Ellison, explaining that it did not receive the request, informing him that it responded to the request once it learned of it, and requesting that he dismiss the lawsuit. In his reply, attorney Ellison "declined to dismiss the case," rejected defendant's "assertion that the FOIA request was not received," asserted that compliance with a request after an action is commenced does not spare the agency from its obligation to pay "attorneys' fees, costs, and disbursements," and insisted that defendant's conduct "mandates the FOIA penalties." Attorney Ellison likened this to an individual mailing a tax return late, noting that "the State assesses a penalty regardless of excuses." Thus, despite defendant's efforts to find an amicable resolution, the lawsuit proceeded.

In lieu of answering, defendant filed a motion seeking summary disposition on the basis that the Court of Claims lacked subject matter jurisdiction. Plaintiff's argument that jurisdiction existed was based on the premise that defendant denied his request by failing to respond to it, but defendant argued that this premise was wrong because it never actually received the request. Thus, there was no failure to respond, no denial, and no basis for jurisdiction. Kenneth Partridge, an employee for defendant's IT department, explained in an affidavit the steps that he conducted to recover the e-mail that had purportedly been sent to defendant by plaintiff. Partridge explained that he searched the department's mailbox "including online archives and 30 day deleted item storage" but that the search "returned zero responsive items, indicating no message from [plaintiff] was found anywhere in [defendant's] mailbox or archive." However, Partridge did eventually locate the e-mail:

> I performed a message trace using the Office 365 Exchange Admin Center portal and identified that one message from [plaintiff] to [defendant] was received by the Office 365 Exchange Online system on 3/7/2022 21:46 UTC. The message trace indicated that the message was automatically quarantined by the system rather than delivered to [defendant's mailbox]. Due to this, the message was never delivered to [defendant's e-mail address], including the Junk E-mail folder.

Plaintiff responded with a competing motion for summary disposition pursuant to MCR 2.116(I)(2) (nonmoving party entitled to summary disposition).

The Court of Claims determined that the record was sufficient for it to decide the competing motions for summary disposition without conducting a hearing, and it granted defendant's motion while denying plaintiff's motion. The court explained that it agreed with defendant that the request was never received by defendant:

> The scenario in this case is equivalent to e-mail delivery to a spam or junk e-mail folder, as contemplated in MCL 15.235(1). The Legislature contemplated that not all e-mail systems reliably deliver mail and that, in some instances, e-mailed FOIA requests may not reach their target. Thus, FOIA provides that if the e-mail is delivered to a spam or junk-mail folder, the request is not received until one day after the public body becomes aware of it. In fact, this situation is even more

compelling because defendant never received the e-mail in the first place. The e-mail did not go into defendant's spam or junk mailbox because defendant's server (Microsoft Office 365 Exchange) quarantined the e-mail before it ever arrived in any of defendant's mailboxes. The Court, therefore, concludes that the e-mail quarantine was the equivalent of delivery to a spam or junk e-mail folder.

The court also noted that plaintiff's arguments regarding the subsequent denial of part two of the request was irrelevant because plaintiff's lawsuit was based on the March 2022 failure to respond, not the April 2022 partial denial. The court explained that "FOIA only permits the Court to consider claims based on final decisions, and plaintiff's complaint is not based on a final decision of a public body." Therefore, the court concluded that defendant was entitled to summary disposition pursuant to MCR 2.116(C)(4).

This appeal followed.

## II. STANDARDS OF REVIEW

This Court reviews de novo a trial court's decision regarding a motion for summary disposition. *True Care Physical Therapy, PLLC v Auto Club Group Ins Co*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 362094); slip op at 3. Summary disposition is proper pursuant to MCR 2.116(C)(4) when, after considering the pleadings, depositions, admissions, and other documentary evidence, the court determines that it lacks jurisdiction over the subject matter of the case. *Id*. at 4.

This Court also reviews "de novo the interpretation and application of a statute . . . ." *Boyle v Gen Motors Corp*, 468 Mich 226, 229; 661 NW2d 557 (2003). This Court reviews "de novo a circuit court's legal determinations in a FOIA case." *Bitterman v Village of Oakley*, 309 Mich App 53, 61; 868 NW2d 642 (2015). "The court's factual findings are reviewed for clear error if a party challenges the underlying facts supporting the court's decision. Discretionary determinations in a FOIA case are reviewed for an abuse of discretion. A trial court abuses its discretion when its decision falls outside the range of principled outcomes." *Id*. (quotation marks and citations omitted).

This Court reviews de novo issues of ripeness. *King v Mich State Police Dep't*, 303 Mich App 162, 188; 841 NW2d 914 (2013).

## III. RELEVANT FOIA PROVISIONS

This case concerns application of Michigan's Freedom of Information Act, section 1 of which provides in relevant part:

> It is the public policy of this state that all persons, except those persons incarcerated in state or local correctional facilities, are entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and public employees, consistent with this act. The people shall be informed so that they may fully participate in the democratic process. [MCL 15.231(2).]

Accordingly, under MCL 15.233(1), "upon providing a public body's FOIA coordinator with a written request that describes a public record sufficiently to enable the public body to find the public record, a person has a right to inspect, copy, or receive copies of the requested public record of the public body." " 'Public record' means a writing prepared, owned, used, in the possession of, or retained by a public body in the performance of an official function, from the time it is created." MCL 15.232(i).

FOIA provides certain procedures and responsive deadlines with which the relevant public body must comply when responding to a request made pursuant to this act. Section 5 provides in relevant part:

> (1) Except as provided in section 3, a person desiring to inspect or receive a copy of a public record shall make a written request for the public record to the FOIA coordinator of a public body. A written request made by facsimile, electronic mail, or other electronic transmission is not received by a public body's FOIA coordinator until 1 business day after the electronic transmission is made. However, if a written request is sent by electronic mail and delivered to the public body's spam or junk-mail folder, the request is not received until 1 day after the public body first becomes aware of the written request. The public body shall note in its records both the time a written request is delivered to its spam or junk-mail folder and the time the public body first becomes aware of that request.

> (2) Unless otherwise agreed to in writing by the person making the request, a public body shall . . . respond to a request for a public record within 5 business days after the public body receives the request by doing 1 of the following:

> (a) Granting the request.

> (b) Issuing a written notice to the requesting person denying the request.

> (c) Granting the request in part and issuing a written notice to the requesting person denying the request in part.

> (d) Issuing a notice extending for not more than 10 business days the period during which the public body shall respond to the request. A public body shall not issue more than 1 notice of extension for a particular request.

> (3) Failure to respond to a request under subsection (2) constitutes a public body's final determination to deny the request if either of the following applies:

> (a) The failure was willful and intentional.

> (b) The written request included language that conveyed a request for information within the first 250 words of the body of a letter, facsimile, electronic mail, or electronic mail attachment, or specifically included the words, characters, or abbreviations for "freedom of information", "information", "FOIA", "copy", or a recognizable misspelling of such, or appropriate legal code reference to this act,

on the front of an envelope or in the subject line of an electronic mail, letter, or facsimile cover page. [MCL 15.235.]

Section 10 provides a procedure by which relief can be obtained by a party whose request for a public record was denied:

(1) If a public body makes a final determination to deny all or a portion of a request, the requesting person may do 1 of the following at his or her option:

(a) Submit to the head of the public body a written appeal that specifically states the word "appeal" and identifies the reason or reasons for reversal of the denial.

(b) Commence a civil action in the circuit court, or if the decision of a state public body is at issue, the court of claims, to compel the public body's disclosure of the public records within 180 days after a public body's final determination to deny a request.

* * *

(6) If a person asserting the right to inspect, copy, or receive a copy of all or a portion of a public record prevails in an action commenced under this section, the court shall award reasonable attorneys' fees, costs, and disbursements. If the person or public body prevails in part, the court may, in its discretion, award all or an appropriate portion of reasonable attorneys' fees, costs, and disbursements. The award shall be assessed against the public body liable for damages under subsection (7).

(7) If the court determines in an action commenced under this section that the public body has arbitrarily and capriciously violated this act by refusal or delay in disclosing or providing copies of a public record, the court shall order the public body to pay a civil fine of $1,000.00, which shall be deposited into the general fund of the state treasury. The court shall award, in addition to any actual or compensatory damages, punitive damages in the amount of $1,000.00 to the person seeking the right to inspect or receive a copy of a public record. The damages shall not be assessed against an individual, but shall be assessed against the next succeeding public body that is not an individual and that kept or maintained the public record as part of its public function. [MCL 15.240.]

In sum, if a FOIA request is delivered via e-mail then it is deemed "received" by the public body the business day following the date the electronic transmission was made. MCL 15.235(1). However, if the e-mail was delivered to the entity's "spam or junk-mail folder" then it is not deemed "received" by the public body until the business day following the date that the entity became aware of the request. MCL 15.235(1). A public body generally must respond to a FOIA request within 5 business days of receiving it, and a failure to comply with this deadline is treated as a final determination to deny the request. MCL 15.235(2), (3). Finally, the right of a party to bring a civil action regarding a FOIA request is contingent upon there having been a final determination to deny the request. MCL 15.240(1)(a).

## IV. APPLICATION

## A. PLAIN MEANING

Plaintiff argues that defendant made a final determination to deny plaintiff's request by failing to respond to the request after it was received. We disagree.

Resolution of this issue requires statutory interpretation. "The foremost rule, and our primary task in construing a statute, is to discern and give effect to the intent of the Legislature." *In re AGD*, 327 Mich App 332, 343; 933 NW2d 751 (2019). "The words used by the Legislature in writing a statute provide us with the most reliable evidence of the Legislature's intent." *Drew v Cass County*, 299 Mich App 495, 499; 830 NW2d 832 (2013).

> If the language of a statute is clear and unambiguous, the statute must be enforced as written and no further judicial construction is permitted. . . . Only when an ambiguity exists in the language of the statute is it proper for a court to go beyond the statutory text to ascertain legislative intent." [*Vermilya v Delta College Bd of Trustees*, 325 Mich App 416, 418-419; 925 NW2d 897 (2018) (quotation marks and citation omitted).]

"Where the language of a statute is of doubtful meaning, a court must look to the object of the statute in light of the harm it is designed to remedy, and strive to apply a reasonable construction that will best accomplish the Legislature's purpose." *Marquis v Hartford Accident & Indemnity*, 444 Mich 638, 644; 513 NW2d 799 (1994). Courts should give the statute a reasonable construction that best accomplishes that purpose. *Id*. Interpreting courts may consider a variety of factors and apply principles of statutory construction but "should not abandon the canons of common sense." *Id*.

Pertinent to this case, MCL 15.235(1) addresses the possibility that a public body may not become aware that it received an e-mail because of automated e-mail sorting systems. By stating that the public body does not receive such a request until it actually becomes aware of it, this statute discourages implying knowledge of a FOIA request that was delivered to a public body's potentially unseen e-mail folders. Although the statute does not expressly refer to a quarantine process that diverts an e-mail entirely away from any inbox, we agree with the trial court that an automated system's sending an e-mail to a quarantine area is the equivalent of sending it to a "spam or junk-mail folder." This conclusion is bolstered by the fact that not all e-mail systems use the terms "spam" and "junk" for their alternative inboxes. For example, Gmail sorts seemingly unnecessary e-mails into folders designated for "Promotions" and "Social" in addition to its "Spam" folder. Thus, we conclude that this statutory provision represents a general intent to remedy situations in which messages are incidentally diverted away from a user's primary inbox and, therefore, not seen.[1]

---

[1] Nevertheless, we invite the Legislature to provide additional guidance regarding what an agency's responsibility is when an email is quarantined.

Thus, the trial court did not err by treating the quarantined e-mail as equivalent to a "junk" or "spam" e-mail for the purposes of receipt by DTMB.

## B. SUBJECT MATTER JURISDICTION

For the reasons discussed above, plaintiff's lawsuit was not ripe because it was initiated prior to a denial of plaintiff's request for public records. However, it has not been established in Michigan whether lack of ripeness divests a court of its subject matter jurisdiction. The Court of Claims, by granting summary disposition pursuant to MCR 2.116(C)(4), implicitly decided that it does. We decline to review the merits of this issue because, even if the Court of Claims did err, the error was harmless because summary disposition was nevertheless appropriate pursuant to MCR 2.116(C)(10) (no genuine issue of material fact).

Summary disposition is properly granted pursuant to MCR 2.116(C)(4) when "[t]he court lacks jurisdiction of the subject matter." Subject-matter jurisdiction is the power of the court to decide the *type* of case—not the particular case before it. *Bowie v Arder*, 441 Mich 23, 39; 490 NW2d 568 (1992). In contrast, the doctrine of ripeness "focuses on the *timing* of the action." *Mich Chiropractic Council v Comm'r of the Office of Fin and Ins Servs*, 475 Mich 363, 379; 716 NW2d 561 (2006), overruled in part on other grounds by *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349 (2010). A claim is not ripe when it rests on future contingent events. *King*, 303 Mich App at 188. When a claim is not ripe, the claim is not justiciable. *Mich Chiropractic Council*, 475 Mich at 381.

MCL 15.240(1)(b) expressly provides that an action involving the denial of a FOIA request should be commenced within the Court of Claims when the action involves a state public body. In this case, the court did not directly rule that it lacked subject-matter jurisdiction, but this is a logical reading of the court's opinion. The court stated that summary disposition was proper under MCR 2.116(C)(4) when the trial court lacked subject-matter jurisdiction and then granted summary disposition pursuant to MCR 2.116(C)(4). However, its rationale was based on the timing of plaintiff's lawsuit. Therefore, the court's ruling was based on ripeness.

Whether a trial court properly grants summary disposition pursuant to MCR 2.116(C)(4) when plaintiff's claim is not ripe is an unresolved issue of Michigan law, but regardless, any error would have been harmless because summary disposition was warranted pursuant to Subrule (C)(10). This Court has recognized that there have been inconsistencies in this Court's decisions regarding whether summary disposition is properly granted under MCR 2.116(C)(4) when a party's claim is not ripe. *Van Buren Charter Twp v Visteon Corp*, 319 Mich App 538, 543; 904 NW2d 192 (2017). However, "[e]ven if the trial court erroneously granted defendant's motion for summary disposition under Subrule (C)(4) on ripeness grounds, this Court will not reverse when summary disposition is nonetheless appropriate under a different subrule." *Id*. Although granting summary disposition on a different ground from the ground a party raised implicates the opposing party's right to due process if the party lacks notice and a meaningful opportunity to be heard on the specific issue on which the lower court based its decision, *Zelasko v Bloomfield Charter Twp*, ___ Mich App ___, ___; ___ NW2d ___ (Docket No. 359002); slip op at 6, this concern is not present here because DTMB had also moved for summary disposition pursuant to MCR 2.116(C)(10) (no genuine issue of material fact), and the motion put plaintiff on notice that DTMB was arguing that his claim was untimely. Affirming on the basis that the lower court could have

-7-

granted summary disposition pursuant to MCR 2.116(C)(10) does not implicate plaintiff's due-process rights in this case.

For the reasons discussed above, plaintiff did not have a valid FOIA claim because the issue was not ripe. If MCR 2.116(C)(4) was not an appropriate basis for granting summary disposition then summary disposition would nevertheless have been appropriate pursuant to MCR 2.116(C)(10). Therefore, any error was harmless.

Affirmed.

/s/ Noah P. Hood
/s/ Kathleen A. Feeney
/s/ Allie Greenleaf Maldonado