MEANS v JOWA SECURITY SERVICES

Docket No. 104361. Submitted January 5, 1989, at Detroit. Decided
    April 17, 1989. Leave to appeal applied for.

   Mark A. Means sought employment with Jowa Security Services.
   Means went through a training program and was ranked sixth
   in his class, but was not hired for one of the seven available
   positions because he had a beard and the grooming code for the
   position as uniformed court officer for the 36th District Court
   required that employees be clean-shaven except for mustaches.
   Means had a beard because he suffered from pseudofolliculitis
   barbae, an ingrown hair condition which is aggravated by
   shaving. Means brought in Wayne Circuit Court an action
   against Jowa under the Handicappers' Civil Rights Act for job
   discrimination based upon the handicap imposed by his medical
   condition. Jowa claimed that plaintiff was not a handicapper
   and that, in any event, the failure to be clean-shaven was
   directly related to plaintiff's ability to perform the duties of the
   job, since to be a court officer requires projection of the proper
   image. At the completion of testimony, defendant moved for a
   directed verdict on the basis that there was insufficient evi-
   dence to support plaintiff's claim. The trial court, Charles
   Kaufman, J., denied the motion. The jury returned a verdict of
   $38,900 in favor of plaintiff. Defendant moved for a judgment
   notwithstanding the verdict or a new trial. The motion was
   denied. Defendant appealed.

       The Court of Appeals *held*:

       1. The trial court properly denied defendant's motion for a
   directed verdict. Plaintiffs' condition is a handicap within the
   meaning of the Handicappers' Civil Rights Act. Since there was
   more than sufficient evidence that plaintiff was physically able
   to perform the duties of a court officer, it was proper to send to
   the jury the question of whether the grooming code require-
   ment was reasonably related to the ability of an individual to

REFERENCES

Am Jur 2d, Appeal and Error §§ 624-627; Job Discrimination
    §§ 111-126.
Construction and effect of state legislation forbidding job discrimi-
    nation on account of physical handicap. 90 ALR3d 393.

perform the job. Further, the jury's verdict was not contrary to the great weight of the evidence.

2. The record fails to substantiate defendant's claim that the actions of plaintiff's attorney so prejudiced defendant's case that a new trial was mandated.

3. The trial court did not abuse its discretion in denying defendant's motion for a new trial on the basis that the verdict was excessive and secured by passion or prejudice.

Affirmed.

1. CIVIL RIGHTS — HANDICAPPERS' CIVIL RIGHTS ACT — FAILURE TO HIRE — INTENT.

Two requirements must be met in order for a failure to hire to fall within the prohibition of the Handicappers' Civil Rights Act which provides that an employer shall not fail or refuse to hire, recruit, or promote an individual because of a handicap that is unrelated to the individual's ability to perform the duties of a particular job or position: (1) the employer's failure or refusal must have been because of a handicap, and (2) the handicap in question must be unrelated to the individual's ability to perform the duties of the job or position at issue (MCL 37.1202[1][a]; MSA 3.550[202][1][a]).

2. CIVIL RIGHTS — HANDICAPPERS' CIVIL RIGHTS ACT — FAILURE TO HIRE — INTENT.

An employer's intent is irrelevant to determining whether a handicap was unrelated to an employee's ability to perform a job for purposes of the prohibition of the Handicappers' Civil Rights Act which provides that an employer shall not fail or refuse to hire, recruit, or promote an individual because of a handicap that is unrelated to the individual's ability to perform the duties of a particular job or position; the employer's intent is not irrelevant to determining whether the employer's failure or refusal to hire, recruit, or promote the plaintiff was because of a handicap (MCL 37.1202[1][a]; MSA 3.550[202][1][a]).

3. CIVIL RIGHTS — HANDICAPPERS' CIVIL RIGHTS ACT — HANDICAP — PSEUDOFOLLICULITIS BARBAE.

Pseudofolliculitis barbae, a skin condition which is aggravated by shaving, is a handicap within the meaning of the Handicappers' Civil Rights Act (MCL 37.1102[b]; MSA 3.550[103][b]).

4. CIVIL RIGHTS — HANDICAPPERS' CIVIL RIGHTS ACT — FAILURE TO HIRE — GROOMING CODE.

It is a violation of the Handicappers' Civil Rights Act to refuse to hire an individual as a court officer because he did not satisfy a grooming code which requires all personnel to be clean-shaven

where the guard is not clean-shaven because he suffers from pseudofolliculitis barbae, he is otherwise qualified for the job, and there was no showing that being clean-shaven was necessary to perform the job (MCL 37.1202[1][a]; MSA 3.550[202][1][a]).

5. APPEAL — ATTORNEY'S CONDUCT — STANDARD OF REVIEW.

The Court of Appeals, when reviewing an allegation of error because of the improper conduct of an attorney at trial, should first determine whether the claimed error was harmless; if not, the Court must inquire whether the error was properly preserved by objection and request for a jury instruction or motion for mistrial, in which case there is a right to appellate review; if not so preserved, a new trial should nevertheless be ordered if the claimed error may have caused the result or played too large a part in the result and may have denied a party a fair trial.

*Siemion, Huckabay, Bodary, Padilla & Morganti, P.C.* (by *Raymond W. Morganti*), for plaintiff.

*Peter P. Cobbs,* for defendant.

Before: GILLIS, P.J., and SHEPHERD and SAWYER, JJ.

SHEPHERD, J. In this action under the Handicappers' Civil Rights Act, MCL 37.1101 *et seq.*; MSA 3.550(101) *et seq.*, defendant, Jowa Security Services, appeals as of right from a jury award of $38,900 in favor of plaintiff and from the trial court's denial of its motions for a directed verdict, a judgment notwithstanding the verdict, or a new trial. We affirm. This case specifically involves the issue of whether defendant could refuse to hire plaintiff because of a physical condition which required plaintiff to grow a beard, where a job description or "qualification" of the job required that employees be clean-shaven, except for mustaches. In a broader sense, the issue is whether an employer may avoid the application of the act by

making a condition that is a handicap under the act a disqualification for employment.

The trial record reveals that plaintiff suffered from pseudofolliculitis barbae, a condition characterized by ingrown beard stubble which causes inflammation, abscesses, cysts and scars. Three doctors testified that the only way for plaintiff to alleviate the problem was to grow a beard.

Plaintiff in fact cultivated a beard and, except for one month, maintained the beard throughout his various employments preceding his application for employment with the defendant. His prior positions included work as a plain-clothes and uniformed police officer with the Detroit Police Department during 1977 and 1978 and several uniformed security positions after he was laid off by the Detroit Police Department.

At the time plaintiff applied for employment with defendant in 1984, plaintiff was working at a hospital as a uniformed security guard. Plaintiff applied for the employment because he heard about security jobs opening up at the 36th District Court and that laid-off Detroit police officers were being given preference in hiring. The defendant had a contract with the City of Detroit to supply uniformed court officers for the courtrooms. Plaintiff filled out an application at defendant's office and, a few days later, was told to report to the police academy for a three-week training program. Plaintiff quit his job at the hospital and began training at the police academy. He continued to maintain his beard throughout the training program. There were fifteen to twenty people in his class; there were seven full-time and several part-time positions available. Plaintiff ranked sixth in his class, but was not placed into the available positions because he would not shave. The "uniform and appearance" section (hereafter referred

to as the grooming code) contained in the standard operating procedure manual for the 36th District Court officers required that employees be clean-shaven, except for mustaches, and that beards shall not be worn.

Plaintiff went to see Brenda Geissendamner, a vice-president for defendant. He attempted to give her a letter from his doctor explaining his skin condition, but she refused to read the letter and told plaintiff to shave or "get out the door." Plaintiff testified that he then contacted another of defendant's vice-presidents, Leon Turner, who also refused to look at the letter and told plaintiff that he would have to shave. Geissendamner testified that being clean-shaven was a qualification and condition of the job; Turner testified that the grooming code was important because clients want court officers to have a military look. Defendant's president, John Coursey, testified that seventy-five percent of the security job is the image the guard projects and that a neat and professional appearance will deter crime.

Plaintiff testified that he had no source of income after being denied placement as a courtroom security guard. Plaintiff filed a complaint with the Michigan Civil Rights Commission, which resulted in defendant offering a plain-clothes position, which plaintiff turned down because the job required a car and plaintiff did not have one and could not afford to purchase one. Plaintiff testified that for about four months after he was fired by defendant he was unable to pay his monthly bills, that his credit rating suffered, that he was forced to borrow money, and that this caused embarrassment and humiliation.

Plaintiff sought damages exceeding $100,000 for defendant's refusal to place him as a court officer; the jury returned a verdict of $38,900. Defendant's

posttrial motion for relief, brought on several grounds, was denied.

On appeal, defendant first contends that the trial court should have directed a verdict in its favor. Defendant argues that plaintiff failed to present sufficient evidence that he was a handicapper within the meaning of the act. Defendant raised this issue by moving for a directed verdict at trial and later moving for judgment notwithstanding the verdict.

When reviewing a trial court's denial of a motion for directed verdict or judgment notwithstanding the verdict, the testimony and all legitimate inferences that may be drawn are examined in a light most favorable to the nonmoving party. If there are material issues of fact upon which reasonable minds might differ, the matter is one properly submitted to the jury. If reasonable jurors could disagree, neither the trial court nor this Court may substitute its judgment for that of the jury. *In re Leone Estate,* 168 Mich App 321, 324; 423 NW2d 652 (1988).

To prevail on a claim for handicap discrimination, a plaintiff must prove that the employer violated a provision of the act. The relevant provision, MCL 37.1202; MSA 3.550(202), states:

> (1) An employer shall not:
> (a) Fail or refuse to hire, recruit, or promote an individual *because of a handicap* that is unrelated to the individual's ability to perform the duties of a particular job or position. [Emphasis added.]

"Handicap" is defined in MCL 37.1103(b); MSA 3.550(103)(b) as

> a determinable physical or mental characteristic of an individual or a history of the characteristic

which may result from disease, injury, congenital condition of birth, or functional disorder which characteristic:

(i) . . . is unrelated to the individual's ability to perform the duties of a particular job or position, or is unrelated to the individual's qualifications for employment or promotion.

Hence, for an employee to prevail two requirements must be met: (1) the employer's failure to hire or place must have been "because of a handicap" and (2) the handicap in question must be unrelated to the individual's ability to perform the duties of a particular job. *Carden v General Motors Corp,* 156 Mich App 202, 212; 401 NW2d 273 (1986), lv den 428 Mich 891 (1987); *Bogue v Teledyne Continental Motors,* 136 Mich App 374, 377; 356 NW2d 25 (1984), lv den 421 Mich 862 (1985). The first requirement is determined in the light of the employer's intent, since it looks to the reasons for the employer's decision not to hire or place. By contrast, the second requirement does not require an inquiry into an employer's intent, since intent is irrelevant to the determination of whether a handicap, defined as a physical or mental characteristic in § 103(b), is related or unrelated to the ability to perform the job. *Bogue, supra,* pp 377-378.

This Court has held that pseudofolliculitis barbae, the condition which the evidence unequivocally showed plaintiff suffered from, is a physical characteristic within the ambit of the definition of a "handicap" found in § 103(b). *Shelby Twp Fire Dep't v Shields,* 115 Mich App 98, 103; 320 NW2d 306 (1982). Hence, the only issue here is under the second requirement of the two-pronged test which must be satisfied to prevail in a handicapper action, that being whether this physical characteris-

tic was unrelated to plaintiff's ability to perform the job as a court officer.

Viewed most favorably to the plaintiff, there is overwhelming evidence that plaintiff was physically able to carry out the duties of a court officer despite the fact that his skin condition required him to maintain a beard. The fact that defendant established a written requirement of "no beard" does not bind the court or the trier of fact in determining whether the handicap was related to plaintiff's ability to perform the job. Since reasonable minds could find that plaintiff was fully able to perform the duties of the job with a beard, the question of whether defendant had a handicap unrelated to the job was properly submitted to the jury.

With regard to the first requirement, defendant cites *Bogue, supra,* for the proposition that plaintiff failed in his burden to show that defendant's decision not to place plaintiff in a court officer position was "because of a handicap." Specifically, defendant argues that plaintiff did not offer rebuttal testimony or respond to defendant's stated reasons of "policy and qualifications" as the basis for refusing to place plaintiff in the position. We disagree.

The testimony of defendant's agents did indicate that the grooming code was necessary to deter crime by creating an air of authority and was necessary for the good reputation of the company. This reasonably implies that a legitimate nondiscriminatory reason existed for defendant's decision not to place plaintiff, inasmuch as he did not comply with the grooming code. Viewing the evidence most favorably to the plaintiff, however, plaintiff established that the grooming code contained no medical exception and was applied without any consideration of his special circumstances.

Indeed, plaintiff presented evidence that defendant's agents refused to read his letter containing the medical reason for his beard, despite the fact that he could fully perform the duties of a uniformed court officer with a beard. From this the jury could reasonably infer that the grooming code was being used as a mere pretext to discriminate against any physical characteristic not sanctioned by defendant and that defendant's reason for not adopting a medical exception was so that it could make hiring and firing decisions "because of a handicap" simply by referring to its inflexible grooming code. This type of decision-making based solely on physical characteristics is precisely the type of conduct that § 202(1)(a) of the act was intended to prohibit. Accordingly, the trial court correctly submitted plaintiff's handicapper claim to the jury.

If we were to hold otherwise, employers could place in their job descriptions all types of qualifications that would effectively eliminate handicapped persons from the work force. The issue is whether a particular condition is a handicap. If it is, the question is whether it is unrelated to the ability to do the job—not whether the employer has written into the job description a provision which would automatically preclude employment of one with a particular handicap. We specifically hold that an employer may not make the absence of a particular handicap part of the job description, make compliance with the job description a qualification for employment, and then use the qualification as a basis for denying employment to one who has that handicap. Furthermore, an employer may not use such a job description as a means of avoiding the issue of whether the handicap is unrelated to an employee's ability to perform the job. In so holding we do not wish to imply that grooming

requirements are of necessity void in every case. Our holding only applies to grooming requirements that relate to a handicap of a particular employee. By extension our holding only applies to job qualifications that are related to handicaps of particular employees. This is because the act itself refers to physical and mental characteristics of individuals and an individual's ability to perform the duties of a particular job. MCL 37.1103(b); MSA 3.550(103)(b).

We also reject defendant's claim that the trial court should have granted its motion for a new trial brought on the basis of the weight of the evidence. In reviewing the denial of a motion for new trial, this Court accords deference to the trial court's decision because the trial court, having heard the witnesses, is uniquely qualified to judge the jury's assessment of witness credibility. *In re Leone Estate, supra,* p 324. The trial court's decision will not be disturbed unless a clear abuse of discretion is shown. *Bosak v Hutchinson,* 422 Mich 712, 737; 375 NW2d 333 (1985). Having given careful consideration to the record, we find no clear abuse of discretion.

Next, defendant contends that it was denied a fair trial due to misconduct on the part of plaintiff's counsel. We disagree.

In *Reetz v Kinsman Marine Transit Co,* 416 Mich 97, 103; 330 NW2d 638 (1982), our Supreme Court described how an appellate court should review an appeal based on alleged attorney misconduct:

> [T]he appellate court should first determine whether or not the claimed error was in fact error and, if so, whether it was harmless. If the claimed error was not harmless, the court must then ask if the error was properly preserved by objection and

request for instruction or motion for mistrial. If the error is so preserved, then there is a right to appellate review; if not, the court must still make one further inquiry. It must decide whether a new trial should nevertheless be ordered because what occurred may have caused the result or played too large a part and may have denied a party a fair trial. If the court cannot say that the result was not affected, then a new trial may be granted.

In this case, we agree with defendant's assertion that it was improper for plaintiff's counsel to question plaintiff on the policies of his prior employers with respect to beards after the trial court ruled that the policies were not relevant to this case. These questions were asked while plaintiff's counsel was attempting to introduce to the jury the fact that plaintiff had previously worked as a uniformed court officer and as a police officer while wearing a beard. The trial court had ruled to allow inquiry on whether plaintiff wore a beard during these prior jobs. Defense counsel objected to the testimony elicited outside the scope of the court's ruling, and the trial court sustained the objections.

One of the dangers of repeatedly attempting to introduce evidence already ruled inadmissible is that it may present an appearance of "brow beating" and cause the jury to sympathize with counsel. *In re Ellis Estate,* 143 Mich App 456, 462; 372 NW2d 592 (1985). Here, we are satisfied that plaintiff's counsel did not purposely indulge in such conduct to create an appearance of "brow beating" and that the questions asked did not cause prejudice to defendant. Any perceived prejudice could have easily been cured by a timely request for a curative instruction.

Defendant also claims that unfairness occurred

as a result of the closing argument of plaintiff's counsel. There was no objection, and our review of the isolated remarks challenged by defendant convinces us that the remarks did not deprive defendant of a fair trial. The remark of plaintiff's counsel on plaintiff's ability to perform his prior jobs with a beard was not error, but rather constituted a proper comment on the evidence which was introduced at trial. See *DeVoe v C A Hull, Inc,* 169 Mich App 569, 581; 426 NW2d 709 (1988), lv den 431 Mich 862 (1988). The remarks of plaintiff's counsel on the amount which defendant was paid by the City of Detroit to supply security guards and reference to the fact that defendant had no representatives seated at the table with defense counsel were improper, but were not particularly inflammatory and could have easily been remedied by an appropriate instruction. We, therefore, conclude that the error did not deprive defendant of a fair trial.

Finally, we reject defendant's assertion that the trial court should have granted its motion for new trial based on an assertion that the verdict was excessive and may have been influenced by passion or prejudice. MCR 2.611(A)(1)(c). Our review of the proofs introduced by plaintiff, including the evidence of his lost wages and mental anguish, persuades us that the jury verdict was within the range of the evidence produced at trial and was not secured by improper methods, sympathy or prejudice. Hence, we find no abuse of discretion in the trial court's decision to deny defendant's motion for new trial on this basis. *Bosak, supra,* p 731; *Strach v St John Hospital Corp,* 160 Mich App 251, 284-285; 408 NW2d 441 (1987), lv den 429 Mich 886 (1987), reconsideration denied 430 Mich 866 (1988).

Affirmed.