WELCH v GENERAL MOTORS CORPORATION

Docket No. 138284. Submitted October 6, 1993, at Detroit. Decided
    June 6, 1994, at 10:05 A.M. Leave to appeal sought.

Leland F. Welch brought an action in the Genesee Circuit Court
    against General Motors Corporation, Buick Motor Division,
    alleging that the physical limitations provisions of the collec-
    tive bargaining agreement between GM and the plaintiff's union
    prevented the plaintiff's participation in GM's overtime program
    in violation of the Handicappers' Civil Rights Act (HCRA), MCL
    37.1101 et seq.; MSA 3.550(101) et seq. The plaintiff suffered a
    heart attack in 1981 after working for GM for eighteen years,
    and returned to work with certain medical restrictions. The
    court, Philip C. Elliott, J., granted summary disposition for GM
    on the ground that GM had no discriminatory intent in denying
    the plaintiff overtime opportunities under the collective bar-
    gaining agreement. The plaintiff appealed.

The Court of Appeals held:

1. The employer's good faith or lack of discriminatory intent
is directly relevant under the HCRA. The plaintiff concedes the
defendant's lack of discriminatory intent.

2. The principle that employees in Michigan have an inde-
pendent, nonnegotiable right not to be discriminated against on
the basis of handicap is not violated by GM's action in this case.
The restriction on the plaintiff's ability to work overtime does
not constitute a unilateral impediment or the invidious type of
discrimination, without rational justification or countervailing
benefit, that the HCRA proscribes. The alleged discrimination
against the plaintiff must be evaluated in light of the discrimi-
nation in favor of the plaintiff, i.e., superseniority, provided in
the collective bargaining agreement.

3. The collective bargaining agreement does not violate the
HCRA. There was a need for special treatment of handicappers

REFERENCES

Am Jur 2d, Job Discrimination §§ 124, 186, 253, 272, 295, 446, 1998,
    2003, 2010.
Discrimination "because of handicap" or "on the basis of handicap"
    under state statutes prohibiting job discrimination on account of
    handicap. 81 ALR4th 144.

because of their inability to perform their original job assignments; in response to that need, handicappers received the benefit of superseniority; and it was the handicappers' disadvantage in being retained that compelled the physical limitations provisions in the collective bargaining agreement.

Affirmed.

CIVIL RIGHTS — HANDICAPPERS' CIVIL RIGHTS ACT.
  The propriety of an employer's action, when challenged under the Handicappers' Civil Rights Act, is determined in the light of the employer's intent (MCL 37.1101 *et seq.*; MSA 3.550(101) *et seq.*).

*David Melkus,* for the plaintiff.

*Maurice G. Jenkins,* for the defendant.

Before: TAYLOR, P.J., and HOOD and B. A. JASPER,* JJ.

TAYLOR, P.J. Plaintiff Leland Welch filed suits against his union and defendant General Motors Corporation, Buick Motor Division (GM), under the Handicappers' Civil Rights Act, MCL 37.1101 *et seq.*; MSA 3.550(101) *et seq.* (HCRA),[1] alleging that their actions prevented his participation in GM's overtime program in violation of the act. Defendants removed the cases to federal court. Eventually, the Sixth Circuit Court of Appeals remanded plaintiff's case against GM to this state's courts in order for him to pursue his HCRA claims. *Welch v General Motors, Corp,* 922 F2d 287 (CA 6, 1990). On remand, the Genesee Circuit Court granted GM's motion (and denied plaintiff's motion) for summary disposition under MCR 2.116(C)(10) on

---

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

[1] Plaintiff's claim is based on MCL 37.1202(1)(b) and (c); MSA 3.550(202)(1)(b) and (c), which provides that an employer shall not discriminate against an individual with respect to the terms of employment because of a handicap that is unrelated to the individual's ability to perform the duties of a particular job.

the ground that plaintiff agreed that GM had no discriminatory intent in denying him overtime opportunities under the collective bargaining agreement. We affirm.

The facts are undisputed. Plaintiff worked for GM as a forklift driver for eighteen years, and then suffered a heart attack in June 1981. He returned to work in January 1984 with the following medical restrictions:

> No lifting over 15 lbs., sit part time, avoid standing and/or walking full, no strenuous activity.

GM's medical department determined that plaintiff was able to perform as a forklift driver because the job did not violate the medical restrictions. This is the factual synopsis set forth in the Sixth Circuit's opinion:

> In 1982, GM and the Union had negotiated a collective bargaining agreement that included provisions defining the rights of employees with physical limitations. The agreement provided a degree of preferential treatment for disabled employees. Paragraph 112 of the agreement provides that an employee who is disabled and cannot perform his previous work will be transferred to other work that he is able to do. In addition, paragraph 116 of the agreement provides that, in the event of a reduction in force, disabled employees with sufficient seniority cannot be bumped from their position by nondisabled employees with greater seniority.
> However, the agreement also contains some disadvantages for disabled employees. GM had implemented an overtime "equalization" system in which non-disabled employees would have equal opportunity to work overtime, even at jobs other than their own. Paragraph 112(b) of the agreement significantly restricts handicapped employees from

participating in the equalization program. It provides that handicapped employees will only be eligible to work overtime on their own jobs, even if they are physically capable of working overtime on another job, and they will be charged with having worked the equalization time, even though they did not actually perform such work, thereby further reducing the overtime that they normally would receive in their own jobs.

Upon Welch's return to work in his previous position, he was allowed to work overtime on jobs other than his own. In May, 1984, the Union filed a grievance on behalf of one of Welch's co-workers, arguing that paragraph 112(b) precluded Welch from working these overtime hours. Welch argued that paragraph 112(b) did not apply to him since he had not been given a preferential job assignment and that, in any event, the Union was not entitled to restrict his participation in the overtime equalization program based upon his medical restrictions [*Welch* at 289].

The grievance was resolved in favor of the co-worker, and GM began restricting plaintiff's overtime. Plaintiff unsuccessfully filed his own grievance, and filed suit against GM and his union. These suits are the subject of the Sixth Circuit's opinion quoted above.

Following the Sixth Circuit's remand, the Genesee Circuit Court granted defendant's motion for summary disposition under the HCRA because plaintiff agreed that GM had no discriminatory intent in denying him overtime opportunities under the physical limitations provisions of the collective bargaining agreement. On appeal, plaintiff contends that neither bad faith nor discriminatory intent is relevant under the HCRA. He also argues that GM should be barred from asserting reliance on the agreement as a good-faith defense because the agreement requires GM to deny plaintiff work

regardless of ability, and civil rights are individual rights that cannot be bargained away.

Plaintiff's argument regarding the relevance of the employer's intent is incorrect. This Court has held that, when challenged under the HCRA, the propriety of an employer's action is "determined in the light of the employer's intent." *Means v Jowa Security Services*, 176 Mich App 466, 472; 440 NW2d 23 (1989). Therefore, an employer's good faith or lack of discriminatory intent is directly relevant. Plaintiff concedes defendant's lack of discriminatory intent. In fact, when deposed, plaintiff stated his understanding that the physical limitations provisions of the agreement were designed to protect the interests of handicappers.

Alternatively, plaintiff argues that the agreement improperly relinquished his individual right not to be discriminated against. This Court has recently reaffirmed that employees in Michigan have "an independent, nonnegotiable right not to be discriminated against on the basis of handicap." *Adkerson v MK-Ferguson Co*, 191 Mich App 129, 139; 477 NW2d 465 (1991). As a black-letter statement of law, this principle is incontestable. However, this principle, the essential focus of the HCRA, is not violated by the employer's actions in the instant case.

Plaintiff mischaracterizes the situation presented here by focusing solely on the restriction of his ability to work overtime. This restriction does not constitute a unilateral impediment or the invidious type of discrimination, without rational justification or countervailing benefit, that the HCRA proscribes. The case law cited by plaintiff deals with situations in which the plaintiffs were completely denied employment because of their handicaps. The alleged discrimination against

plaintiff must be evaluated in light of the discrimination *in favor of* plaintiff, i.e., superseniority.

A brief review of the history of these physical limitations provisions will illuminate the appropriate context in which to evaluate the employer's policy under review here. These facts are cited by defendant and are not disputed by plaintiff.

The provisions at issue originated in 1957 as a response to the tension between management's desire to retain disabled workers in other jobs they could perform and the contractual seniority rights of workers already in those alternative job placements. Handicappers with job-related restrictions were granted superseniority. In 1979, both management and plaintiff's union acknowledged serious abuses of this arrangement by workers with dubious handicaps. The physical limitations provisions challenged here were intended as a disincentive to those workers not genuinely disabled.

As a general matter, defendant cites the actual benefit conferred on handicappers who have retained their job assignments during periods of layoffs; specifically regarding plaintiff, defendant cites an instance of layoffs in 1984 where plaintiff retained his job assignment while several other employees in plaintiff's occupational group with greater seniority than plaintiff were transferred into less desirable job classifications. Plaintiff's claim of discrimination must be evaluated in light of the benefits, actual and potential, conferred on plaintiff and all other handicappers.

In *Matras v Amoco Oil Co,* 424 Mich 675; 385 NW2d 586 (1986), our Supreme Court disapproved of the defendant's layoff plan that classified workers by age, sex, and race to maintain a fixed percentage of workers in each category. The Supreme Court cited three flaws vitiating the plan: there was no evidence in the record that the three

groups needed special treatment; the factors relied on did not confer a benefit on the relevant employees; and the record did not indicate a need for a layoff plan that was not neutral with regard to those factors. *Id.* at 689-691.

In the instant case, all three prongs of the *Matras* test are met: the handicappers' inability to perform their original job assignments indicates the need for special treatment; the benefit of superseniority is conferred upon them; and it was the handicappers' disadvantage in being retained that compelled these provisions in the first place.

In light of the specific facts of this case, we would not serve the intent of the Legislature by ruling that the collective bargaining agreement between defendant and plaintiff's union violates the HCRA. Given the standard articulated in *Matras, supra,* we conclude that the physical limitations provisions at issue here do not violate the HCRA. There is no genuine issue of material fact, and defendant is entitled to judgment as a matter of law.

Affirmed.