# STATE OF MICHIGAN

# COURT OF APPEALS

JEROME SOULLIERE,

      Plaintiff/Counter-Defendant-
      Appellee/Cross-Appellant,

v

ALLSTATE INSURANCE COMPANY,

      Defendant/Counter-Plaintiff-
      Appellant/Cross-Appellee.

UNPUBLISHED
April 7, 2015

No. 316640
Lapeer Circuit Court
LC No. 10-043349-CK

Before: BOONSTRA, P.J., and MARKEY and K. F. KELLY, JJ.

PER CURIAM.

Plaintiff Jerome Soulliere brought this action for first-party no-fault benefits (work loss) arising from a September 10, 2009 motor vehicle accident. After a February 2013 trial, the jury rejected the cross-claims of defendant Allstate Insurance Company[1] that plaintiff had made false or innocent misrepresentations and that Allstate had, in fact, overpaid and unjustly enriched plaintiff with its prior payments. The jury awarded plaintiff $8,132 in work-loss benefits and $2,864 in penalty interest; the trial court entered judgment for plaintiff accordingly on February 22, 2013. Defendant appeals by right the trial court's order of May 20, 2013, denying its motion for judgment notwithstanding the verdict (JNOV), or in the alternative remittitur or new trial. Defendant also appeals the trial court's November 6, 2013, opinion and order awarding plaintiff $25,000 in attorney fees and $9,659.55 in taxable costs. Plaintiff cross-appeals the trial court's grant of partial directed verdict in defendant's favor limiting the timeframe of plaintiff's work loss claim and also directing a verdict regarding plaintiff's claim to penalty interest on tardily paid medical bills. For the reasons discussed below, we affirm.

## I. MOTION FOR JNOV, NEW TRIAL OR REMITTITUR

---

[1] Defendant brought a cross-claim in the trial court and is the initial appellant; plaintiff's application for leave to file a delayed cross-appeal was granted. For the sake of clarity, we refer to the parties by name or by their initial trial court designations of plaintiff and defendant.

-1-

Defendant first argues that the trial court erred by denying its motion for JNOV, or in the alternative remittitur or new trial. Defendant contends that the evidence at trial overwhelmingly showed not only that it did not owe plaintiff any work-loss benefits but that it had overpaid plaintiff $2,063. The jury verdict, defendant argues, could only have been reached on the basis of miscalculating the evidence regarding lost wages. Complicating this issue is that plaintiff is a self-employed contractor that paid himself a wage through the corporation he formed. See *Ross v Auto Club Group*, 481 Mich 1, 4-5, 8; 748 NW2d 552 (2008). In the four years preceding the accident that caused nerve injury to plaintiff's left arm and prevented him from performing the carpentry work he had been doing for his business, plaintiff had consistently paid himself wages of $51,000 a year. Plaintiff's wages in the months before the accident were much lower for a variety of reasons. Accountants for both plaintiff and defendant agreed that $3,924 a month represented a fair estimate of plaintiff's lost wages. Using this amount, over the period of disability permitted by the trial court, plaintiff's estimated lost wages were a maximum of $46,696. The parties also agreed that plaintiff's lost wage claim was subject to several setoffs: (1) one month's lost wages attributable to an unrelated disability,[2] (2) $19,350 American General Insurance paid to plaintiff under a disability policy and (3) $13,145 that defendant paid plaintiff before ending payments after video-taping plaintiff buying supplies at a building supply store.

At the hearing on its motion, defendant argued that plaintiff's lost wage claim should also be offset by the wages plaintiff's corporation paid him during the period of disability. Plaintiff's counsel argued regarding this assertion as follows:

> Allstate put no evidence in the record regarding what, if any, specific wages [plaintiff] earned during the period of his wage loss where he was under the total disability . . . . There were wages put in on a gross annual benefit by some of them, but there was no proof in the record about what, if any, checks or income [plaintiff] actually received during the period that he was totally disabled[.] . . . So the jury, quite correctly, with no evidence, would have no way of knowing.

The trial court agreed with plaintiff's argument, ruling on this issue as follows:

> The review of the evidence submitted during the trial reveals that accounting experts for both parties calculated Plaintiff's monthly wage loss at $3924 for a total possible wage loss of $46,696. Both parties stipulated that the payments of Allstate were in the amount of $13,145, and that American General's payments that were in the amount of $19,350, should be offset. The Plaintiff testified during the trial that he was disabled for one month [by an intervening disability], which amounts to another offset of $3924, for a total of $36,419.

---

[2] In a chart admitted at trial as exhibit R, submitted on appeal as exhibit A, defendant asserts the intervening disability was for a longer period than the one month plaintiff acknowledged. But even so, defendant's exhibit shows a maximum lost wage, without offsets, of $43,258.

> The potential wage loss benefits of $46,145 less the offsets, results in a net wage loss calculation of $10,277. Then this amount was reduced by 15 percent for taxes, [3] which equals to $8735.45. The jury award was for $8132.

Because the evidence supported the jury's verdict, the trial court denied the motion.

We review de novo a trial court's decision on a motion for JNOV. *Taylor v Kent Radiology, PC*, 286 Mich App 490, 499; 780 NW2d 900 (2009). The motion asserts that the evidence at trial was insufficient to sustain the jury's verdict. *Id*. On review, we must consider the evidence submitted at trial and all legitimate inferences arising from the evidence in a light most favorable to the nonmoving party. *Id*. The motion should be granted only when there was insufficient evidence presented to create an issue of fact for the jury. *Heaton v Benton Constr Co*, 286 Mich App 528, 532; 780 NW2d 618 (2009).

We review for an abuse of discretion the trial court's decision on a motion for new trial or remittitur. *Id*. at 538. A new trial may be granted when a jury verdict awarding damages is either clearly or grossly excessive or against the great weight of the evidence. MCR 2.611(A)(1)(d), (e); *Taylor*, 286 Mich App at 525. Alternatively, where it is claimed an award is excessive, the trial court may offer the prevailing party an opportunity to consent to judgment in the highest amount that is supported by the evidence. MCR 2.611(E)(1); *Heaton*, 286 Mich App at 538. A new trial on the basis that a verdict is against the great weight of the evidence may be granted only when the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand. *People v Unger*, 278 Mich App 210, 232; 749 NW2d 272 (2008). In sum, a jury award of damages should not be disturbed when it "falls reasonably within the range of the evidence and within the limits of what reasonable minds would deem just compensation . . . ." *Shaw v Ecorse*, 283 Mich App 1, 17; 770 NW2d 31 (2009). The trial court only abuses its discretion when its ruling is outside the range of principled outcomes. *Heaton*, 286 Mich App at 538.

We conclude that the trial court did not err in denying defendant's motion for JNOV and did not abuse its discretion in denying defendant's motion for new trial or remittitur because the jury's verdict in this case was within the range supported by the evidence. *Shaw*, 283 Mich App at 17; *Means v Jowa Security Services*, 176 Mich App 466, 477; 440 NW2d 23 (1989). Defendant's argument that the trial court erred by failing to deduct wages paid to plaintiff during his disability fails for lack of evidentiary support. A party must support its position with specific references to the record and may not leave it to this Court to search for the factual basis to sustain or reject its position. MCR 7.212(C)(7); *Yee v Shiawassee Co Bd of Comm'rs*, 251 Mich App 379, 406; 651 NW2d 756 (2002). Our review of the record reveals no evidence of specific wage payments to plaintiff during the period of disability to support defendant's claimed offset.

---

[3] MCL 500.3107(1)(b) provides that because they are not taxable "the benefits payable for such loss of income shall be reduced 15% unless the claimant presents to the insurer in support of his or her claim reasonable proof of a lower value of the income tax advantage in his or her case[.]"

Defendant's argument that plaintiff was paid wages during his disability rests solely on a single demonstrative aid that defendant's expert, accountant Greg Wood, prepared to assist the presentation of his testimony. Exhibit R was a one-page document with several columns purporting to be a summary of plaintiff's lost wage claim and defendant's position. The document listed various offsets to plaintiff's wage loss claim, including two entries under the column for the timeframe allowed by the court (September 2009 to August 15, 2010) for plaintiff's "actual wages" from September to December 2009 ($3,600) and from January to December 2010 ($8,750). Defendant points to no testimony or documentary evidence in the record, and we find none, that substantiates or explains these entries labeled "actual wages." Exhibit R itself states the source of the information to be "2009 W2" and "2010 W2."

Demonstrative evidence may be admitted where it aids the trier of fact in reaching a conclusion on an issue that is material to the case. *Unger*, 278 Mich App at 247; see also *Lopez v General Motors Corp*, 224 Mich App 618, 627-629 n 16; 569 NW2d 861 (1997). But MRE 703 requires that "[t]he facts or data in the particular case upon which an expert bases an opinion or inference shall be in evidence." See *Taylor*, 286 Mich App at 521; *Badiee v Brighton Area Schools*, 265 Mich App 343, 370-371; 695 NW2d 521 (2005). Under this rule, "an expert witness may not base his or her testimony on facts that are not in evidence." *Unger*, 278 Mich App at 248. It would be incongruous to permit a party to present evidence of a fact in the guise of a demonstrative aid to an expert's testimony where the underlying facts are not otherwise in evidence through testimony or other properly admitted documentary evidence. Moreover, even if the "actual wages" entries on exhibit R were properly admitted, they purport to show W-2 information for the calendar years 2009 and 2010. The W-2 information does not establish that plaintiff actually received wages in the months he was under disability which covered some but not all months of 2009 and some but not all months of 2010.[4] Consequently, viewing the evidence in the light most favorable to plaintiff, there was sufficient evidence to submit the case to the jury and the trial court properly denied defendant's motion for JNOV. *Taylor*, 286 Mich App at 499-500; *Heaton*, 286 Mich App at 532. Similarly, viewing the evidence in the light most favorable to plaintiff, the jury's award was "within the range of the evidence and within the limits of what reasonable minds would deem just compensation, [and] should not be disturbed." *Shaw*, 283 Mich App at 17. Therefore, the trial court did not abuse its discretion denying defendant's motion for new trial or remittitur. *Heaton*, 286 Mich App at 538-539. For the same reasons, defendant's claim to judgment as a matter of law on a theory of unjust enrichment has no merit.

## II. ATTORNEY FEES

---

[4] A "W-2" is an Internal Revenue Service (IRS) form used by employers to report the wages, tips, and other compensation of employees to the IRS, the wage earner, and to state and local tax agencies. The information on a W-2 covers the entire year; wages earned are not reported on a monthly basis. See IRS publication, *General Instructions for Forms W-2 and W-3* (2014), <http://www.irs.gov/pub/irs-pdf/iw2w3.pdf>, p 13.

Defendant next argues that that the trial court erred by ordering it to pay plaintiff's attorney fees under MCL 500.3148(1) because it did not unreasonably refuse to pay plaintiff's no-fault claim. An insurer may avoid liability for a plaintiff's attorney fees where its refusal or delay in paying benefits was the product of a legitimate question of statutory construction, constitutional law, or a bona fide factual uncertainty. *Moore v Secura Ins*, 482 Mich 507, 520; 759 NW2d 833 (2008). In this case, defendant asserts its refusal and delay in paying no-fault benefits was because of a bona fide factual uncertainty whether defendant owed plaintiff any benefits because it believed plaintiff's claim was fraudulent, and its policy excluded benefits for fraudulent and false claims.

This issue presents a mixed question of law and fact. *Ross*, 481 Mich at 7. "What constitutes reasonableness is a question of law, but whether the defendant's denial of benefits is reasonable under the particular facts of the case is a question of fact." *Id*. We review de novo questions of law but the trial court's findings of fact for clear error. *Univ Rehab Alliance, Inc v Farm Bureau General Ins Co*, 279 Mich App 691, 693; 760 NW2d 574 (2008). A trial court's finding of fact is clearly erroneous when this Court is left with the definite and firm conviction that a mistake has been made. *Id*. The trial court's ultimate decision to award attorney fees is reviewed for an abuse of discretion. *Bronson Methodist Hosp v Home-Owners Ins Co*, 295 Mich App 431, 442; 814 NW2d 670 (2012). "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Id*.

On March 15, 2013, plaintiff's counsel filed a motion for attorney fees and costs supported by a brief and attachments including his affidavit regarding services, State Bar of Michigan data supporting a reasonable attorney fee rate, an invoice regarding legal services and costs, and a letter from defendant to plaintiff dated August 4, 2010. This last advised plaintiff that his claim for work-loss benefits was denied because "you have made material misrepresentations in presenting your claim," and "you have concealed facts pertinent and material to your claim." Allstate's letter also demanded repayment of work-loss benefits it had previously paid in the amount of $13,145.94. At a hearing on May 20, 2013, defendant's counsel argued that plaintiff was not entitled to attorney fees under the statute because Allstate's denial was not unreasonable based on surveillance it had conducted and a subsequent examination under oath that led it to conclude "plaintiff was in fact working." The trial court noted it had rejected this same argument in denying defendant's pretrial motions for summary disposition, that "the jury didn't buy" the argument either, and that the argument "isn't going to fly" with respect to plaintiff's motion for attorney fees. The trial court ruled that defendant's denial of benefits was unreasonable and entered its order on June 10, 2013, granting plaintiff's motion for attorney fees for the reasons stated on the record. This order also scheduled an evidentiary hearing on the reasonableness of plaintiff's attorney fees and costs. Evidentiary hearings were held on July 22 and August 16, 2013. The trial court issued its opinion and order on November 6, 2013.

In its opinion, the trial court noted that to be entitled to attorney fees under MCL 500.3148(1) two requisites must be satisfied: (1) benefits must be overdue and (2) the insurer's refusal or delay in paying them must be unreasonable. See *Moore*, 482 Mich at 517. In this case, the jury determined that benefits were overdue and therefore the burden was on defendant to show the delay or refusal to pay benefits was reasonable. See *Attard v Citizens Ins Co*, 237 Mich App 311, 317; 602 NW2d 633 (1999) ("When an insurer refuses to make or delays in

making payment, a rebuttable presumption arises that places the burden on the insurer to justify the refusal or delay."). The trial court also recognized that the jury's verdict did not foreclose finding that defendant acted reasonably because that depends on "whether its initial refusal to pay was unreasonable." *Ross*, 481 Mich at 11. With this firm understanding of the law, the trial court, nonetheless, again rejected defendant's defense of a bona fide factual uncertainty and determined that defendant unreasonably refused to pay benefits, reasoning as follows:

> [T]his Court finds that this case does not present a bona fide factual question. Notably, on August 4, 2010, Defendant sent plaintiff a benefit cutoff letter, wherein Defendant stated it was denying Plaintiffs claim for wage loss benefits for the reasons "[t]hat [Plaintiff] . . . made material misrepresentations in presenting [his] claim," and "[t]hat Defendant [sic] . . . concealed facts pertinent and material to [his] claim." . . . Defendant then filed a Counter Complaint against Plaintiff alleging fraud, unjust enrichment, fraudulent misrepresentation; and innocent misrepresentation. . . . At trial, however, the Jury unanimously rejected Defendant's counter-claims . . . . In so deciding, the jury, in this Court's opinion, implicitly determined that Defendant unreasonably refused to pay Plaintiff's claim for wage loss benefits.

> This Court, moreover, has had its own opportunity to reassess the reasonableness of Defendant's actions in this case. Upon further review of the testimony and evidence presented by the parties at trial, this Court stands by its initial determination that Defendant unreasonably refused to pay Plaintiff's claim for wage loss benefits. Therefore, this Court holds that Plaintiff is entitled to attorney fees pursuant to MCL 500.3148(1).

We conclude that the trial court did not err as matter of law by ruling that defendant did not deny and refuse to pay no-fault benefits on the basis of a bona fide factual dispute. Further, we find that the trial court did not clearly err by determining that defendant's refusal and delay in paying benefits was unreasonable. *Ross*, 481 Mich at 7. As to the latter, the trial court had the benefit of not only the jury's determination but also its own assessment regarding the evidence presented at trial, which would include the credibility of the witnesses. See MCR 2.613(C) (providing that in assessing whether a trial court's finding is clearly erroneous "regard shall be given to the special opportunity to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it"). This Court is not left with the definite and firm conviction that a mistake has been made. *Ross*, 481 Mich at 7.

Defendant also argues that plaintiff's counsel did not adequately support his claim for fees and that his statement of services amounted to billing fraud working a forfeiture of his claim. First, defendant did not preserve this issue for appeal by including it in defendant's statement of the questions presented on appeal. See MCR 7.212(C)(5). Accordingly, we are not obligated to address this issue. See *Busch v Holmes*, 256 Mich App 4, 12; 662 NW2d 64 (2003). Nevertheless, we find that the merits of defendant's argument do not warrant a determination that the trial court abused its discretion in awarding a reasonable attorney fee. Defendant presents no argument that the trial court failed to consider appropriate factors or abused its discretion in determining that $250 an hour was a reasonable attorney fee rate in this case. See *Smith v Khouri*, 481 Mich 519, 526, 530-532; 751 NW2d 472 (2008). As for defendant's

argument regarding overbilling, the trial court more than adequately addressed this claim by reducing the hours counsel claimed from 344 to 100. The result reduced the claim of plaintiff's counsel from $86,000 to $25,000. We are not convinced the trial court's decision was outside the range of principled outcomes, and therefore, was not an abuse of discretion. *Id*. at 526.

## III. PLAINTIFF'S CROSS-APPEAL

Plaintiff argues in his cross-appeal that the trial court erred by granting defendant partial directed verdict limiting the timeframe of plaintiff's claim for work-loss benefits to the period from September 10, 2009 (the date of the accident) through August 15, 2010 and three weeks in June and July 2011 while plaintiff recovered from accident-related surgery. Plaintiff also argues that the trial court erred by granting defendant partial directed verdict with respect to plaintiff's claim for penalty interest on overdue medical bills that defendant paid shortly before trial. We review de novo the trial court's decision on a motion for a directed verdict. *Krohn v Home-Owners Ins Co*, 490 Mich 145, 155; 802 NW2d 281 (2011). The motion should be granted only if the evidence and all legitimate inferences arising from the evidence, viewed in a light most favorable to the nonmoving party, fails to establish a claim as a matter of law. *Sniecinski v Blue Cross & Blue Shield of Mich*, 469 Mich 124, 131; 666 NW 2d 186 (2003).

After plaintiff had rested his case, defendant argued that both plaintiff's doctors and plaintiff agreed that the accident-caused injury was not disabling outside the timeframes noted above. Plaintiff's counsel argued that plaintiff's business continued to suffer lost income beyond plaintiff's physical disability that should be recoverable as a work-loss no-fault benefit. The trial court granted the motion after reviewing the evidence in the light most favorable to the plaintiff, which showed that plaintiff's two primary doctors released plaintiff to return to work after August 15, 2010, except for a subsequent three-week time period for necessary surgery and recovery. We affirm the trial court.

MCL 500.3107(1)(b) provides no-fault benefits for "[w]ork loss consisting of loss of income from work an injured person would have performed during the first 3 years after the date of the accident if he or she had not been injured." The plain language of the statute requires that to receive work-loss benefits the claimed loss of income must be causally related to injuries received in the accident. See *Luberda* v *Farm Bureau Gen Ins Co*, 163 Mich App 457, 460-461; 415 NW2d 245 (1987) (holding with respect to a statute worded slightly differently that it "clearly requires that the cause of the work loss be the accident-related injuries"); see also *Marquis v Hartford Accident & Indemnity*, 444 Mich 638, 645 n 9, 649; 513 NW2d 799 (1994) (approving of the *Luberda* Court's interpretation of the statute as presently drafted). Work loss may be compensated under the statute only if there is a "but for" relationship to the accident-caused injuries. *Marquis*, 444 Mich at 645, n 9; see also *Morales v State Farm Mutual Ins Co*, 279 Mich App 720, 739; 761 NW2d 454 (2008). Nevertheless, work-loss benefit claims are "not restricted to the period of disability if the insured's continued loss of income is attributable to injury incurred in the accident." *Marquis*, 444 Mich at 646. "The goal of the no-fault act is to place individuals in the same, but no better, position that they were in before their automobile accident." *Ross v Auto Club Group*, 269 Mich App 356, 361; 711 NW2d 787 (2006), aff'd in part and rev'd in part 481 Mich 1 (2008); see also *Brown v Home-Owners Ins Co*, 298 Mich App 678, 689; 828 NW2d 400 (2012) (affirming an award of both lost wages of a subchapter S corporation owner and lost profitability as a result of an automobile accident).

In this case, plaintiff's claim for work loss during the timeframe permitted by the trial court was based on evidence that he was paid wages for performing most of the carpentry work for his business. Because of the injury plaintiff suffered in the accident, he was disabled from performing the work he had previously been paid wages to perform. But except for the three-week recovery period for a surgical procedure, plaintiff's injury did not prevent him from working after August 15, 2010, and did not cause any loss of income. Also, plaintiff highlights no evidence to the contrary that would support a question of fact regarding a causal link between his accidental injury and any lost profitability of his business after August 15, 2010. Plaintiff asserts such a causal link only on the basis that the business was more profitable before the accident. This is a "common logical fallacy known, in the realm of causation theory, as '*post hoc ergo propter hoc*' ('after this, therefore because of this')." *Dep't of Trans v Haggerty Corridor Partners Ltd Partnership*, 473 Mich 124, 142, n 36; 700 NW2d 380 (2005). Showing only a temporal relationship is generally insufficient to present a fact issue on a necessary causal link between plaintiff's accidental injury and loss of business profitability. See, e.g., *West v Gen Motors Corp*, 469 Mich 177, 185-186, n 12; 665 NW2d 468 (2003). Consequently, we conclude that the trial court did not err in granting defendant partial directed verdict limiting the timeframe of plaintiff's work loss claim. *Krohn*, 490 Mich at 155.

Plaintiff also argues that the trial court erred by granting defendant's motion for partial directed verdict with respect to his claim for penalty interest on overdue medical bills, some of which defendant paid shortly before trial. "Personal protection insurance benefits are overdue if not paid within 30 days after an insurer receives reasonable proof of the fact and of the amount of loss sustained." MCL 500.3142(2). "An overdue payment bears simple interest at the rate of 12% per annum." MCL 500.3142(3). We review this issue de novo. *Krohn*, 490 Mich at 155.

Defendant argued below that the evidence at trial showed that defendant had paid all the medical expenses of plaintiff, with interest for those bills that were overdue, directly to the medical services providers. Further, defendant argued, defendant's direct payments to the providers were appropriate in this case; therefore, plaintiff had no penalty-interest claim against defendant. Plaintiff argued that the medical payments were overdue, and it was plaintiff's effort that obtained their payment. Therefore, although the statute does not specify who is entitled to the interest payment, it should be paid to plaintiff. The trial court granted defendant's motion because it was undisputed that defendant had paid the medical providers albeit belatedly with interest and that plaintiff could not also recover penalty interest from defendant.

On appeal, the parties present no new arguments, but defendant submits email documentation of a pretrial telephone conversation in which defense counsel learned that plaintiff's counsel had not asserted a lien on the medical bills. Consequently, direct payment of the medical bills to the providers was appropriate. We conclude that error warranting reversal did not occur because the result of the trial court's ruling is not inconsistent with substantial justice. See MCR 2.613(A); *Solomon v Shuell*, 435 Mich 104, 138 n 31; 457 NW2d 669 (1990), citing *Johnson v Corbet*, 423 Mich 304, 326; 377 NW2d 713 (1985).

The parties agree that MCL 500.3142 does not specify who is entitled to the penalty interest on overdue no-fault benefits. But "[p]ersonal protection insurance benefits are payable to or for the benefit of an injured person or, in case of his death, to or for the benefit of his dependents." MCL 500.3112. Thus, the no fault act confers a cause of action for benefits on the

injured party. *Hatcher v State Farm Mutual Automobile Ins Co,* 269 Mich App 596, 600; 712 NW2d 744 (2006). MCL 500.3112 also provides that an insurer's payment "in good faith of personal protection insurance benefits, to or for the benefit of a person who it believes is entitled to the benefits, discharges the insurer's liability to the extent of the payments unless the insurer has been notified in writing of the claim of some other person." We conclude this provision applies either directly or by analogy to both the underlying medical benefits and any penalty interest on overdue benefits. Because there is no evidence that defendant acted in bad faith when it paid the overdue medical bills with interest directly to the medical providers, defendant's liability for them was discharged to the extent of the payments made. Consequently, we conclude that the trial court did not err in granting defendant partial directed verdict with respect to penalty interest on overdue medical bills. *Krohn*, 490 Mich at 155.

We affirm. As neither party prevailed in full no taxable costs are awarded pursuant to MCR 7.219.

/s/ Mark T. Boonstra
/s/ Jane E. Markey
/s/ Kirsten Frank Kelly